INEOS USA, LLC f/k/a Innovene USA, LLC, Ineos Polymers, Inc., a/k/a Ineos Olefins, Ineos Olefins & Polymers USA, a Division of Ineos USA, LLC, and Jonathan "Bubba" Pavlovsky, Petitioners,

v.

Johannes "Joe" ELMGREN and Valarie Elmgren, Individually and as Next Friends of their Minor Children, Respondents

No. 14-0507

Supreme Court of Texas.

Argued January 12, 2016

Opinion delivered: June 17, 2016

Rehearing Denied December 16, 2016

---

Charles Randall 'Chad' Flores, David M. Gunn, Erin H. Huber, Beck Redden, LLP, Matthew W. Childs, Tekell Book Matthews & Limmer, LLP, Houston TX, for Petitioners.

David L. Sheller, Sheller Law Firm, PLLC, Donna Roth, Law Offices of Donna Roth, Peter M. Kelly, Kelly, Durham & Pittard, L.L.P., Houston TX, Lynn J. Klement, Law Office of Lynn J. Klement, Angleton TX, for Respondents.

JUSTICE BOYD delivered the opinion of the Court.

This appeal presents three issues regarding Chapter 95 of the Texas Civil Practice and Remedies Code, which protects property owners against liability to contractors, subcontractors, and their employees under certain circumstances. The first issue is whether the statute applies to negligence claims other than those that assert premises liability. Applying our recent decision in *Abutahoun v. Dow Chemical Co.*, 463 S.W.3d 42 (Tex.2015), we hold that it does. The second issue is whether

the statute applies to claims against a property owner's employee. Applying the statute's plain language, we hold that it does not. The third issue is whether the plaintiffs' evidence creates a fact issue that precludes summary judgment despite the statute's protection. We hold that it does not. Because we disagree with the court of appeals on the first issue but agree on the second and third, we affirm the court of appeals' judgment in part and reverse and render judgment in part.

## I.

### Background

Ineos USA, LLC,[1] owns a petrochemical plant in Alvin, Texas. Plaintiff Johannes Elmgren worked as a boilermaker for Zachry Industrial, an independent contractor that provided maintenance services at the plant. In June 2010, Elmgren was injured while replacing a valve on a furnace header. The furnace is part of a processing system through which hot, combustible gas flows through pipes under pressure. Before removing a valve, that part of the pipe system must be shut off from the gas supply. On the night of Elmgren's injury, employees of both Ineos and Zachry conducted a lockout-tagout procedure to isolate the section containing the valves Elmgren was going to replace. Sometime later, the employees conducted a "sniff test," and its results indicated that no gas was present in that section of the system. Elmgren and a coworker removed and replaced one valve, but around 3:00 a.m., as they were removing a second valve, a burst of gas exploded out of the pipe, causing burns to Elmgren's torso, neck, and face.

---

1. Plaintiffs sued Ineos USA, LLC, f/k/a Innovene USA, LLC; Ineos Polymers, Inc., a/k/a Ineos Olefins; and Ineos Olefins & Polymers USA, a Division of Ineos USA, LLC. The parties and the court of appeals refer to these defendants collectively as Ineos, and we will do the same.

Elmgren and his wife Valerie, on behalf of themselves and their minor children, filed suit against Ineos and Jonathan Pavlovsky, an Ineos employee who the Elmgrens alleged was the "furnace maintenance team leader." The Elmgrens theorized that a leaky pipe valve several hundred feet away from the valve on which Elmgren was working caused gas to enter the pipes, resulting in the explosion when Elmgren opened the system. They alleged that the "super-heated gas leak was an unreasonably dangerous condition;" the defendants "knew or should have known of the ... dangers;" the defendants should have warned Elmgren, protected him, or corrected the danger; by failing to do so, the defendants breached a duty to furnish Elmgren a "safe place and conditions" in which to work; the defendants acted negligently and with reckless disregard for the dangers; and the defendants' negligence proximately caused Elmgren's injuries.[2]

Ineos and Pavlovsky filed motions for summary judgment asserting that Chapter 95 of the Texas Civil Practice and Remedies Code protects them from liability on all of the Elmgrens' claims. In response, the Elmgrens argued that Chapter 95 does not apply to their claims, that their evidence established Ineos' liability even if Chapter 95 applies, and that Chapter 95 does not protect Pavlovsky because it only applies to claims against a "property owner." The trial court granted the defendants' motions, and the Elmgrens appealed.

The court of appeals affirmed in part and reversed in part. 431 S.W.3d 657, 672 (Tex.App.2014). Construing the Elmgrens' petition to assert separate claims for premises liability, negligent activity, and negligent undertaking, the court interpreted Chapter 95 to apply only to the premises-liability claim, and thus reversed the summary judgment on the non-premises negligence claims. *Id.* at 667–71. The court affirmed the summary judgment in Ineos' favor on the premises-liability claim, holding that Chapter 95 applies to that claim and the Elmgrens submitted no evidence to avoid the statute's protection. *Id.* at 666. Finally, the court reversed the summary judgment on all claims against Pavlovsky, holding that Pavlovsky failed to conclusively establish that Chapter 95 protects him as the property owner's employee. *Id.* at 667, 671. Based on these holdings, the court remanded the case to the trial court for further proceedings on the Elmgrens' non-premises claims against Ineos and on all of their claims against Pavlovsky. *Id.* at 672. Ineos and Pavlovsky filed a petition for review, which we granted.

## II.

### Negligence Claims

■ Chapter 95 of the Texas Civil Practice & Remedies Code applies to a claim:

(1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcon-

---

**2.** The Elmgrens also alleged that the defendants breached express and implied warranties, that the valves were "defective" and "unsafe," that the "system was defectively designed and unreasonably dangerous," that the defendants caused Elmgren's "wrongful termination," and that the defendants were liable for exemplary damages based on gross negligence. Because the Elmgrens did not appeal the trial court's summary judgment or seek our review as to these claims, we will not review them. *Guitar Holding Co., v. Hudspeth Cty. Underground Water Conservation Dist. No. 1,* 263 S.W.3d 910, 918 (Tex.2008) (citing TEX. R. APP. P. 53.2(f)) (holding that all issues not raised on appeal to this Court are waived).

tractor or an employee of a contractor or subcontractor; and

(2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

TEX. CIV. PRAC. & REM. CODE § 95.002. The statute defines a "claim" to mean "a claim for damages caused by negligence, including a counterclaim, cross-claim, or third party claim." *Id.* § 95.001(1). A "property owner" is a "person or entity that owns real property primarily used for commercial or business purposes." *Id.* § 95.001(3).

The section of Chapter 95 that grants liability protection on which Ineos and Pavlovsky rely provides:

A property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property ... unless:

(1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and

(2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

*Id.* § 95.003.

▮ Under the common law, an independent contractor or its employee can recover against a property owner for premises liability or negligence if the owner exercised some control over the relevant work and either knew or reasonably should have known of the risk or danger. *See Redinger v. Living, Inc.,* 689 S.W.2d 415, 418 (Tex.1985) ("[W]hen the general contractor exercises some control over a subcontractor's work he may be liable unless he exercises reasonable care in supervising the subcontractor's activity."); *CMH Homes, Inc. v. Daenen,* 15 S.W.3d 97, 101 (Tex.2000) ("[I]t follows that an owner or occupier is not liable for deterioration of its premises unless it knew of or by reasonable inspection would have discovered the [danger]."). When Chapter 95 applies, however, it grants the property owner additional protection by requiring the plaintiff to prove that the owner "had actual knowledge of the danger or condition," so the owner is not liable based merely on what it reasonably should have known. TEX. CIV. PRAC. & REM. CODE § 95.003(2). If Chapter 95 applies, it is the plaintiff's "sole means of recovery." *Abutahoun,* 463 S.W.3d at 51.

On appeal from the trial court's summary judgment, the Elmgrens argued that the trial court erred because Chapter 95 only applies to premises-liability claims, and not to non-premises negligence claims like those based on negligent activity or negligent undertaking. The court of appeals agreed, holding that Chapter 95 "does not as a matter of law reach distinct claims for negligent activity and negligent undertaking." 431 S.W.3d at 671. The court thus reversed the summary judgment on the Elmgrens' non-premises negligence claims. *Id.*

The court noted in its opinion that the Dallas Court of Appeals had construed Chapter 95 to reach the opposite result a month earlier. *See id.* at 670 n. 7 (citing *Dow Chem. Co. v. Abutahoun,* 395 S.W.3d 335, 347 n. 5 (Tex.App.–Dallas 2013) ("The plain meaning of the text of Chapter 95 does not preclude its applicability where a claim is based upon negligent actions of

the premises owner."), *aff'd,* 463 S.W.3d 42 (Tex.2015)). After the court of appeals issued its decision in this case, we granted the petition for review in *Abutahoun* and ultimately affirmed, agreeing with the Dallas Court's construction of Chapter 95. *Abutahoun,* 463 S.W.3d at 51–53.

In *Abutahoun,* we first noted that the statute defines the term "claim" to mean "a claim for damages caused by negligence," without distinguishing between different categories of negligence claims. *Id.* at 48 ("The Legislature did not distinguish between negligence claims based on contemporaneous activity or otherwise, and neither shall we."). We then noted that Chapter 95 applies to a claim that "arises from the *condition or use* of an improvement to real property." *Id.* (emphasis added) (quoting TEX. CIV. PRAC. & REM. CODE § 95.002(2)). A year before the Legislature enacted Chapter 95, we analyzed the phrase "condition or use" as used in the Texas Tort Claims Act and concluded that "condition" refers to premises and "use" refers to activities. *Id.* at 50 (citing *DeWitt v. Harris Cty.,* 904 S.W.2d 650, 653 (Tex.1995)). Because the Legislature then used the same phrase in Chapter 95 without defining it, we concluded in *Abutahoun* that Chapter 95 applies "to all negligence claims that arise from either a premises defect or the negligent activity of a property owner or its employees by virtue of the 'condition or use' language in section 95.002(2)." 463 S.W.3d at 50.

The court of appeals did not have the benefit of our decision in *Abutahoun* when it issued its decision in this case. However, we issued *Abutahoun* before the parties filed their briefs in this case, and the Elmgrens now agree in their brief that, in light of *Abutahoun,* the court of appeals' decision was "incorrect." We thus conclude that the court erred in holding that Chapter 95 applies only to the Elmgrens'

premises-liability claims. The trial court correctly applied Chapter 95 to all of the Elmgrens' negligence-based claims, at least against Ineos.

## III.

### Claims against Employees

Pavlovsky argues that the court of appeals erred by holding that Chapter 95 does not protect him, as an employee of the property owner, from liability against the Elmgrens' claims. He notes that, in *Abutahoun,* we stated that Chapter 95 applies "to all negligence claims that arise from either a premises defect or the negligent activity of a property owner *or its employees.*" 463 S.W.3d at 50 (emphasis added). Although he acknowledges that we did not directly address the issue in *Abutahoun,* he contends our statement is consistent with courts of appeals' decisions construing Chapter 95 to apply to claims against a property owner's employees, at least if they serve in a managerial position. *See, e.g., Echartea v. Calpine Corp.,* No. 14–10–00019–CV, 2011 WL 2684889, at *3 n. 1 (Tex.App.—Houston [14th Dist.] July 12, 2011, no pet.) (mem.op.); *Fisher v. Lee & Chang P'ship,* 16 S.W.3d 198, 202–03 (Tex.App.—Houston [1st Dist.] 2000, pet. denied). Because the Elmgrens alleged that Pavlovsky was the "furnace maintenance team leader," that he "maintained, managed, and controlled the de-coke header and other valves," that he had "control over the premises," and that he is the employee who provided an unsafe workplace for Elmgren, Pavlovsky argues Chapter 95 applies to him as well. And since the trial court and court of appeals agreed that there is no evidence that Ineos "had actual knowledge" of the danger or condition, he contends, it necessarily follows that there is no evidence that he had actual knowledge because "[t]he law would impute knowledge on his part to the com-

pany." The court of appeals rejected Pavlovsky's argument, finding nothing in the language of Chapter 95 that indicates it applies to claims against a property owner's employees. 431 S.W.3d at 667. We agree with the court of appeals.

■ We construe Chapter 95 de novo. *Abutahoun*, 463 S.W.3d at 46 (quoting *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 389 (Tex.2014)). In construing the statute, we rely "on the plain meaning of the text unless a different meaning is supplied by statutory definition, is apparent from the context, or the plain meaning would lead to an absurd or nonsensical result." *Beeman v. Livingston*, 468 S.W.3d 534, 538 (Tex.2015) (citing *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010)). "[W]e presume that the Legislature selected each word in the statute with a purpose in mind." *Id.*

### A. "Property Owner"

■ Section 95.003 protects a "property owner," which section 95.001 defines as "a person or entity that owns real property primarily used for commercial or business purposes." Tex. Civ. Prac. & Rem. Code §§ 95.001(3), .003. Under this definition, the statute protects Ineos but not Pavlovsky because Ineos owns the property at issue and Pavlovsky does not. Pavlovsky argues, however, that by referring to both a "person" and an "entity" that owns the property, the definition in section 95.001(3) includes employees of an entity. He reasons that, because the Code Construction Act defines the term "person" to include corporations, partnerships, associations, "and any other legal *entity*," *see* Tex. Gov't Code § 311.005(2) (emphasis added), the definition in section 95.001(3) must use the term "entity" to refer to something other than an "entity" to which the Code Construction Act refers because otherwise section 95.001(3) would refer repetitively to "[any legal entity] or entity" that owns the property. To distinguish an "entity" from a "person," Pavlovsky suggests that "entity" must include an entity's employees, such that section 95.001(3)'s definition of "property owner" means "a person [i.e., an individual or legal entity] or entity [i.e., a legal entity's employees]."

Neither Chapter 95 nor the Code Construction Act defines the term "entity." Pavlovsky's proposed definition, however, is at best quite novel, considering that the term's ordinary meaning refers to an "organization (such as a business or a governmental unit) that has a legal identity *apart from its members or owners.*" *Entity*, Black's Law Dictionary (10th ed.2014) (emphasis added). In the absence of any authority to the contrary, we must apply the term's common meaning, which refers only to the legal organization itself. With regard to the Code Construction Act's definition of a "person" to include a legal entity, the Act provides that its "definitions apply *unless* the statute or context in which the word or phrase is used requires a different definition." Tex. Gov't Code § 311.005 (emphasis added). We conclude that the context of section 95.001(3)'s inclusion of a "person" reflects a reference to the common meaning of both that term and the term "entity," such that the definition refers separately to both a natural person (a human being) and an artificial person (an entity). *See Person*, Black's Law Dictionary (10th ed.2014). Pavlovsky is a natural person, but he is not the "entity" that owns the real property on which Elmgren was harmed.

Moreover, as the court of appeals noted, subsection 95.002(1) expressly refers to employees among those who might assert a claim that Chapter 95 covers, but does not refer to employees among those against whom such a claim might be as-

serted. TEX. CIV. PRAC. & REM. CODE § 95.002(1) (providing that Chapter 95 applies to claims "against a property owner, contractor, or subcontractor for personal injury ... to an owner, a contractor, or a subcontractor or *an employee* of a contractor or subcontractor" (emphasis added)). "[W]hen the legislature uses certain language in one part of the statute and different language in another, the [C]ourt assumes different meanings were intended." *DeWitt*, 904 S.W.2d at 653 (quoting 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 46.06 (5th ed.1992)). Chapter 95 expressly acknowledges that injuries to employees may give rise to claims against a property owner, but it does not include employees among those whom Chapter 95 protects against such claims. We thus conclude that the definition of "property owner" in section 95.001(3) does not include an owner's employees who do not own the property at issue.

## B. Property Owner's Agent

■ Pavlovsky next argues that Chapter 95 protects him because the Elmgrens allege that he is liable for conduct while acting as Ineos's agent. Pavlovsky relies on a court of appeals decision holding that Chapter 95 protects a property owner's agent, at least when the agent is acting in a managerial capacity on the owner's behalf. *See Fisher*, 16 S.W.3d at 202–03.[3] In *Fisher*, a contractor's employee sued a property owner and the property managers after falling from a ladder while working at one of the owner's stores. *Id.* at 200. The property managers argued that Chapter 95 should protect them because they were acting as the owner's agents with authority to manage the property on the owner's behalf. *Id.* at 203. Without analyzing the statute's actual language, the court of appeals agreed and held that Chapter 95 applies to claims against "prop-

---

**3.** A series of Texas court of appeals and federal district court decisions have accepted Pavlovsky's argument, but all of these decisions ultimately rely on *Fisher* as the authority for their holdings. The first in the series was *Padron v. L & M Properties*, No. 11–02–00151–CV, 2003 WL 253927 (Tex.App.–Eastland Feb. 6, 2003, no pet.) (mem.op.), which cited only *Fisher* as support for its conclusion that a "property management company acts as an agent of the property owner and is entitled to the protection from liability provided for in Chapter 95." *Id.* at *3 (citing *Fisher*, 16 S.W.3d at 198). The next was *Nagle v. GOM Shelf, LLC*, No. Civ.A. V–03–103, 2005 WL 1515439 (S.D. Tex. June 24, 2005), which cited only *Fisher* and *Padron* as support for its conclusion that a property owner's agent is "entitled to the same protection under the statute as" the "property owner." *Id.* at *4 (citing *Fisher*, 16 S.W.3d at 203, and *Padron*, 2003 WL 253927, at *3). Then, in *Jones v. Apache Corp.*, No. G–05–499, 2007 WL 656268 (S.D.Tex. Feb. 27, 2007), the court cited only to *Fisher* to support its assertion that Chapter 95 "applies to property owners and also to their agents who oversee their properties." *Id.* at *4 (quoting *Fisher*, 16

S.W.3d at 203). The following year, in *Guidry v. Fairways Offshore Exploration, Inc.*, No. 03:06–CV–513, 2008 WL 4425566 (S.D.Tex. Sept. 30, 2008), the federal court again cited only *Fisher* as support for its assertion that "Texas state and federal courts have extended Chapter 95 protection to property managers." *Id.* at *4 (citing *Fisher*, 16 S.W.3d at 203). Next, in *Abarca v. Scott Morgan Residential, Inc.*, 305 S.W.3d 110 (Tex.App.—Houston [1st Dist.] 2009, pet. denied), the court cited only *Fisher* as support for its holding that a "general partner and agent of the owner" is "entitled to the protection offered by Chapter 95." *Id.* at 122 (citing *Fisher*, 16 S.W.3d at 203). And most recently, in *Echartea*, 2011 WL 2684889, the court cited *Fisher*, *Padron*, and *Nagle* as support for its conclusion that, "[a]lthough section 95.003 only refers to a property owner, agents of a property owner are also entitled to the protection afforded under this section." *Id.* at *3 n. 1 (citing *Fisher*, 16 S.W.3d at 202–03; *Padron*, 2003 WL 253927, at *3; *Nagle*, 2005 WL 1515439, at *4). In each of these cases, the courts relied not on the statute's actual language, but ultimately on *Fisher*, which itself did not rely on the statute's language.

erty owners and also to their agents who oversee their properties." *Id.*

In support of its decision to apply Chapter 95 to property owner's agents, the *Fisher* court cited only to *Berry Property Management, Inc. v. Bliskey*, 850 S.W.2d 644 (Tex.App.–Corpus Christi 1993, writ dism'd by agr.), in which that court held that the term "landlord," as used in the Texas Property Code, includes a landlord's property manager. *Fisher*, 16 S.W.3d at 203 (citing *Berry*, 850 S.W.2d at 658). The *Fisher* court failed to note, however, that the Property Code expressly defined the term "landlord" to "include a manager or agent of the landlord" if "the manager or agent purports to be the owner, lessor, or sublessor in an oral or written lease." *Berry*, 850 S.W.2d at 658 (citing Tex. Prop. Code § 92.001(2)). While the *Fisher* court's analogy may seem logical, our task is to construe Chapter 95 as written, not as we may believe makes the most sense. Unlike the Property Code's definition of "landlord," Chapter 95's definition of "property owner" contains no language including agents who act on behalf of or hold themselves out as the property owner. Tex. Civ. Prac. & Rem. Code § 95.001(3) (defining a property owner as "a person or entity that owns real property primarily used for commercial or business purposes"). In the absence of such language, we must conclude that Chapter 95 does not protect a property owner's agents, and we disapprove of those decisions holding otherwise.

## C. Respondeat Superior

■ Next, Pavlovsky argues that the term "property owner" must include a corporate owner's employees because otherwise claimants can completely circumvent the liability protection that Chapter 95 provides because the employer will ultimately be liable under the doctrine of re-

spondeat superior even if the employee did not have actual knowledge as Chapter 95 requires. In other words, because an employer is liable for its employees' conduct under respondeat superior, a property owner would be liable without evidence of actual knowledge even though the statute says that "the property owner is not liable" unless there is evidence of actual knowledge. *Id.* § 95.003. Because we conclude that Chapter 95 protects a property owner even against claims asserting vicarious liability based on respondeat superior, we disagree.

■ "Under the theory of respondeat superior, ... an employer may be vicariously liable for the negligent acts of its employee if the employee's actions are within the course and scope of his employment." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex.2007). Thus, when an employee acts negligently within the course and scope of employment, respondeat superior permits a person injured by that action to sue the employee's employer directly to recover all damages caused by the employee's negligence. *Id.* Chapter 95, however, protects a property-owner employer against such liability under respondeat superior, unless the exceptions to Chapter 95's protections apply. By its own terms, Chapter 95 applies to "a claim for damages caused by negligence." Tex. Civ. Prac. & Rem. Code § 95.001(1). A claim against a property-owner employer under respondeat superior constitutes "a claim for damages caused by negligence" because the plaintiff seeks to hold the employer vicariously liable for damages "caused by" the employee's negligence.

Although such a claim does not assert that the employer itself was negligent, Chapter 95 defines "claim" to include all claims for "damages caused by negligence," not just claims for "damages

caused by *the property owner's* negligence." *See id.* Chapter 95 thus protects a property owner against respondeat-superior liability for damages caused by the negligence of the property owner's employee. *See Abutahoun,* 463 S.W.3d at 50 (explaining that section 95.002(a)'s reference to claims arising from the "use" of an improvement to real property "encompasses . . . liability based on respondeat superior" (omission in original) (quoting *DeWitt,* 904 S.W.2d at 653)). We thus reject Pavlovsky's argument that Chapter 95 must protect employees because claimants could otherwise circumvent Chapter 95's protection for property-owner employers. Based on Chapter 95's language, we conclude that it does not protect employees, but does protect property-owner employers against all claims based on negligence, including respondeat-superior claims based on the negligence of the owner's employees.

### D. Harmless Error

 Finally, Pavlovsky argues that, even if Chapter 95 does not apply to the claims against him, we should apply harmless-error principles and uphold the trial court's summary judgment on another ground. Specifically, Pavlovsky contends that the Elmgrens only alleged premises-liability claims against him, and he cannot be liable for premises liability as a matter

of law because employees have no duty to provide a safe workplace. *See Leitch v. Hornsby,* 935 S.W.2d 114, 117 (Tex.1996). We decline the invitation to expand the harmless-error rule to summary-judgment appeals in the manner Pavlovsky requests. "Summary judgments . . . may only be granted upon grounds expressly asserted in the summary judgment motion." *G & H Towing Co. v. Magee,* 347 S.W.3d 293, 297 (Tex.2011) (per curiam) (citing Tex. R. Civ. P. 166a(c)). Because Pavlovsky did not assert his no-duty argument as a ground for summary judgment, the trial court could not have erred by not granting summary judgment on that ground. Pavlovsky can, of course, seek summary judgment on that ground on remand, but we will not consider whether he is entitled to summary judgment on that ground before he has first presented his motion to a trial court as Rule 166a requires.

### IV.

### Sufficiency of the Evidence

Having concluded that Chapter 95 protects Ineos against all of the Elmgrens' claims but does not protect Pavlovsky, we turn now to the Elmgrens' argument that the trial court erred by granting Ineos's motion for summary judgment even if Chapter 95 applies.[4] Specifically, the Elm-

---

4. Ineos's attorney suggested in passing at oral argument (but never asserted in any briefs or pleadings) that the Elmgrens cannot challenge the trial court's evidentiary findings in this Court because the court of appeals affirmed the trial court's findings and the Elmgrens did not file a cross-petition for review. *See* Tex. R. App. P. 53.1 ("A party who seeks to alter the court of appeals' judgment must file a petition for review."). Three months after oral argument, the Elmgrens filed a cross-petition and a motion for leave to file it after the filing deadline. At least as to their negligent-activity and negligent-undertaking claims, however, the Elmgrens were not re-

quired to file a cross-petition because the court of appeals reversed the trial court's summary judgment dismissing those claims and remanded them for further proceedings in the trial court. 431 S.W.3d at 672. In response to Ineos's petition for review, the Elmgrens may raise their evidentiary arguments (as an alternative to their primary argument that Chapter 95 does not apply to the non-premises claims, which we rejected in *Abutahoun* and again today), without filing a cross-petition because they do not seek to "alter the court of appeals' judgment" on those claims. Tex. R. App. P. 53.1. Whether they may assert their evidentiary arguments

grens contend that the trial court erred because they submitted evidence to create a fact issue on their assertions that (1) Elmgren's injuries did not arise from a dangerous condition of the same "improvement" on which he was working when the explosion occurred, *see* TEX. CIV. PRAC. & REM. CODE § 95.002(2) (stating the statute applies to a claim "that arises from the condition or use of an improvement ... where the contractor ... constructs, repairs, renovates, or modifies the improvement"), and (2) Pavlovsky and other Ineos employees had "actual knowledge" of the danger or condition that resulted in Elmgren's injury, *see id.* § 95.003(2). The Elmgrens raised these arguments to the court of appeals, but the court disagreed and concluded that the trial court correctly found that the Elmgrens had failed to raise a fact issue to avoid summary judgment on the claims to which Chapter 95 applies. We agree with the trial court and the court of appeals that the Elmgrens' evidence was insufficient to create a fact issue and avoid the application of Chapter 95.

**A. Same Improvement**

In their first evidentiary argument, the Elmgrens contend that Chapter 95 does not apply to their claims because Ineos failed to prove that Elmgren's injuries arose from a condition or use of the same improvement on which he was working when he was injured. Section 95.002(2) states that Chapter 95 applies to a claim "that arises from the condition or use of *an improvement* to real property where the contractor ... constructs, repairs, renovates, or modifies *the improvement.*" *Id.* § 95.002(2) (emphases added). The Elmgrens contend, and we agree, that Chapter 95 only applies when the injury results from a condition or use of the same improvement on which the contractor (or its employee) is working when the injury occurs. *See Hernandez v. Brinker Int'l, Inc.*, 285 S.W.3d 152, 157–58 (Tex.App.–Houston [14th Dist.] 2009, no pet.) (plurality op.) (holding that Chapter 95 did not apply because the injury arose from a different improvement than the one the plaintiff was repairing).

The Elmgrens argue that they provided summary judgment evidence that the improvement on which Elmgren was working was not the same improvement that they allege was defective or negligently used. Specifically, they contend that each furnace in the plant was a separate "improvement" even though all of the furnaces were connected. They point to evidence that Elmgren was working on a "common header system and specifically on a de-coke header" on furnace 101B, while the gas leak occurred in a pipe valve near a different furnace, 101D. There was other evidence that each furnace could be taken down separately without shutting down any of the other furnaces, and each furnace was separated from the de-coke line by a number of valves. Here, the gas leak apparently occurred near a furnace about 200 feet away from the furnace on which Elmgren was working. The Elmgrens contend this evidence at least creates a fact issue as to whether Elmgren was

---

as a basis for challenging the appellate court's judgment affirming the trial court's summary judgment on their premises-liability claim presents a more difficult question. We need not resolve that issue here, however, because we ultimately agree with the trial court and the court of appeals that the Elmgrens presented no evidence that Ineos had actual

knowledge of the danger or condition that resulted in Elmgren's injury. As a result, we would affirm the court of appeals' judgment on the premises-liability claims regardless of whether the Elmgrens had timely filed or were required to file a cross-petition on those claims. We thus deny the Elmgrens' motion for leave to file a cross-petition.

working on the same improvement from which the dangerous condition arose because, although the furnaces are "interconnected, they are not so integrated as to be an indivisible" improvement under the statute.

Chapter 95 does not define "improvement," but we have "broadly defined an 'improvement' to include 'all additions to the freehold except for trade fixtures [that] can be removed without injury to the property.'" *Abutahoun,* 463 S.W.3d at 49 (second alteration in original) (quoting *Sonnier v. Chisholm–Ryder Co.,* 909 S.W.2d 475, 479 (Tex.1995)). Following our "broad" construction of an "improvement" in *Sonnier,* we disagree with the Elmgrens' argument. The valves and furnaces, though perhaps "separate" in a most technical sense, were all part of a single processing system within a single plant on Ineos' property. Even the Elmgrens acknowledged this by alleging in their petition that furnace 101B was on "the common header system." As the court of appeals observed, "what the Elmgrens would have us do is attempt to divide the plant's 'gas process' system of furnaces and headers valve-by-valve or line-by-line into separate, discreet improvements." 431 S.W.3d at 664. We agree with the court of appeals that the evidence conclusively establishes that the entire system was a single "improvement" under Chapter 95.

## B. Actual Knowledge

▇▇▇▇▇ In their second evidentiary argument, the Elmgrens contend that they raised a fact issue as to whether the defendants had "actual knowledge" of the danger or condition that resulted in the injury. TEX. CIV. PRAC. & REM. CODE § 95.003(2) (providing that property owner is not liable "unless ... the property owner had actual knowledge of the danger or condi-

tion ... and failed to adequately warn"). Because evidence of actual knowledge triggers an exception to the protection that Chapter 95 otherwise provides, the plaintiff has the burden to prove the owner's actual knowledge. *See Vanderbeek v. San Jacinto Methodist Hosp.,* 246 S.W.3d 346, 352 (Tex.App.– Houston [14th Dist.] 2008, no pet.) (stating that once defendant proves the applicability of Chapter 95, the burden shifts back to the plaintiff to fulfill the requirements of section 95.003). "Actual knowledge requires knowledge that the dangerous condition existed at the time of the accident, as opposed to constructive knowledge[,] which can be established by facts or inferences that a dangerous condition could develop over time." *City of Corsicana v. Stewart,* 249 S.W.3d 412, 414–15 (Tex.2008) (per curiam). "Circumstantial evidence establishes actual knowledge only when it 'either directly or by reasonable inference' supports that conclusion." *Id.* at 415 (quoting *State v. Gonzalez,* 82 S.W.3d 322, 330 (Tex.2002)).

In their summary judgment motion, Ineos and Pavlovsky argued there was no evidence that they knew of any leak or that gas was present in the pipe on which Elmgren was working at the time of the accident. To the contrary, they contend, the evidence established that they lacked such knowledge because they had performed a lockout-tagout procedure and a sniff test that indicated the line had no gas in it. In response, the Elmgrens point to no evidence of knowledge of gas in the line on which Elmgren was working but instead contend that the "danger or condition" was the presence of explosive gases and hydrocarbons in the plant. The Elmgrens point to Ineos' 15–page safety procedures, to evidence of a similar explosion that occurred about 100 feet away from furnace 101B a few months before Elmgren's injury, and to evidence that, after Elmgren was injured, Ineos began requir-

ing a full nitrogen purge prior to any work on a section of the pipes. According to the Elmgrens, this and similar evidence establishes that Ineos had actual knowledge that the entire plant was explosive.

We do not agree that the presence of gas at the plant was the "danger or condition resulting in" Elmgren's injuries. TEX. CIV. PRAC. & REM. CODE § 95.003(2). Elmgren's injuries arose not from the presence of gas at the plant, but from the presence of gas in the pipe on which he was working. The Elmgrens themselves alleged in their petition that the "super[-]heated gas *leak* was an unreasonably dangerous condition." If the mere presence of flammable or explosive gasses at a petrochemical plant were a "danger or condition," the property owner would always have "actual knowledge" of the danger but would never "fail[ ] to adequately warn" because the injured worker would also always have such knowledge. *Id.* We agree with the court of appeals that, here, the danger or condition was the presence of gas in the line on which Elmgren was working, and there is no evidence that Ineos or Pavlovsky had knowledge of that danger or condition.

## V.

### Conclusion

We conclude that Chapter 95 of the Texas Civil Practice & Remedies Code applies to all categories of negligence claims, including those based on respondeat superior, but Chapter 95 does not apply to claims against an employee or agent of a property owner. We further conclude that the Elmgrens failed to present any evidence to trigger an exception to the protection Chapter 95 provides to Ineos. We therefore (1) affirm the part of the court of appeals' judgment affirming the trial court's summary judgment on the Elmgrens' premises-liability claims against In-

eos, (2) reverse the part of the court of appeals' judgment reversing the trial court's summary judgment on the Elmgrens' negligent-activity and negligent-undertaking claims against Ineos and render judgment in favor of Ineos on those claims, and (3) affirm the part of the court of appeals' judgment reversing the trial court's summary judgment on the claims against Pavlovsky and remanding those claims to the trial court.