**Reverse and Remand in part; Affirm in part and Opinion Filed November 29, 2022**



In the
# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-19-00439-CV

**JOHN PANIAGUA AND HERMELINDA MARAVILLA CORONA, JOSE CAMERINO MARAVILLA, SR., AND MARGARITA MARAVILLA, INDIVIDUALLY, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSE CAMERINO MARAVILLA, DECEASED, AND AS NEXT FRIEND OF S.L.M.S., E.H., L.A.S., AND J.J.M., MINORS, Appellants**
**V.**
**WEEKLEY HOMES, LLC, Appellee**

### On Appeal from the 298th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-19-02097

## MEMORANDUM OPINION ON REMAND
Before Justices Molberg, Carlyle, and Smith
Opinion by Justice Carlyle

This case is before this Court on remand from the Supreme Court of Texas.

Construction worker John Paniagua and several others (collectively, appellants or

plaintiffs) filed negligence, gross negligence, and premises liability claims against

Weekley Homes, LLC and others arising from a fatal construction-site accident.

Weekley filed a motion for summary judgment, which the trial court granted.

Then, the trial court severed appellants' claims against Weekley and denied

appellants' motions for (1) leave to designate experts late and (2) reconsideration and new trial on those claims. In two issues on appeal, appellants challenge the summary judgment, several evidentiary rulings, and the denial of their motion for reconsideration and new trial.

In our initial opinion, we reversed the trial court's summary judgment as to appellants' negligence and premises liability claims.[1] The reversal was based in part on our determination that Weekley did not meet its burden to conclusively establish applicability of Chapter 95 of the Texas Civil Practice and Remedies Code, which is limited to claims arising "from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement." *See* TEX. CIV. PRAC. & REM. CODE § 95.002(2). Weekley appealed to the Supreme Court of Texas.

While Weekley's appeal from our judgment was pending, our supreme court issued opinions in several other cases explaining that though "pleadings generally do not qualify as summary-judgment 'evidence,'" a summary judgment movant may "rely on allegations in a petition 'as truthful judicial admissions'" and "[f]or summary judgment purposes, [a defendant] can rely on [the] plaintiffs' allegations to demonstrate the applicability of Chapter 95." *Weekley Homes, LLC v. Paniagua*, 646 S.W.3d 821, 827–28 (Tex. 2022) (per curiam) (citing *Regency Field Servs., LLC*

---

[1] *See Paniagua v. Weekley Homes, LLC*, No. 05-19-00439-CV, 2021 WL 118663 (Tex. App.—Dallas Jan. 13, 2021) (mem. op.), *rev'd in part & remanded*, 646 S.W.3d 821 (Tex. 2022).

*v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 818–19 (Tex. 2021)). The supreme court also issued two Chapter 95 opinions specifically addressing the framework for determining whether claims arise from the condition or use of an improvement the claimant was constructing, repairing, renovating, or modifying. *See Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 512–14 (Tex. 2022); *Los Compadres Pescadores, L.L.C. v. Valdez*, 622 S.W.3d 771, 784–86 (Tex. 2021).

The supreme court reversed our judgment in part and remanded to give this Court the opportunity to reconsider our initial opinion "to determine, in light of this authority, whether allegations in the plaintiffs' pleadings constitute judicial admissions of material facts" that satisfied Weekley's section 95.002(2) burden and, if appropriate, further address the substantive issues presented.[2] *Weekley Homes*, 646 S.W.3d at 824.

After applying *Regency*, *Energen*, and *Los Compadres*, we again conclude Weekley did not meet its burden to conclusively establish Chapter 95 applies. As before, we reverse the trial court's summary judgment as to appellants' negligence and premises liability claims and remand this case to the trial court for further proceedings consistent with this opinion.

**Background**

---

[2] At this Court's invitation, both sides filed supplemental appellate briefs in this Court following the supreme court's remand.

Weekley hired Leobardo Maravilla, an independent contractor, to install siding and perform "cornice work"[3] on townhomes in a residential development under construction at 5917 Evening Star Place in Dallas, Texas (the project). Leobardo's work crew included his brother Jose Camerino Maravilla and Mr. Paniagua.[4] The project worksite included several temporary electricity poles ("T-Poles") that provided electricity for workers' tools and other equipment during the construction process.

On the day of the accident, rain had been falling intermittently. Lightning events had also occurred in the area. While Leobardo, Jose, and Mr. Paniagua were outside on a rain-soaked driveway moving metal scaffolding, Jose was electrocuted and Mr. Paniagua was reportedly injured by an electric shock. The source of injury is alleged to be electricity that originated from either a T-pole or lightning, conducted by water that had accumulated on the concrete.

Appellants' live petition asserted, among other things:

13. Plaintiffs would respectfully show the Court that [Mr. Paniagua and Jose] were employees, independent contractors, borrowed employees, and/or business invitees of Defendant WEEKLEY HOMES, LLC working at a job site located at or near 5917 Evening Star Place, Dallas TX 75235 - new home construction project. While under the course and scope of his employment with Defendant WEEKLEY HOMES, LLC, [Jose] was storing scaffolds and during the process stepped on concrete flooring or driveway that electrocuted him to death. In addition [Mr. Paniagua] was assisting Decedent and was electrocuted in the process.

---

[3] The record shows a Weekley representative testified, and the parties do not dispute, that cornice work is "typically the exterior siding or trim components of the structure."

[4] Because Leobardo Maravilla and Jose Camerino Maravilla share the same last name, we use their first names in this opinion.

The cement floor or driveway where Plaintiffs were working was near two electrical poles and the cement floor or driveway surrounding same were wet from rainfall which occurred immediately prior to or during the electrocution. There were not any warnings posted about the work-site/premise including that the temporary power poles and lines could cause the surface area to become energized. . . .

After discovery, Weekley filed combined traditional and no-evidence summary-judgment motions, asserting Chapter 95 applies and precludes its liability on the theories alleged. Weekley's summary judgment motion asserted Leobardo "was hired to install siding on" the townhomes. The motion stated:

> At the time of the accident, Decedent and Paniagua were apparently moving scaffolding at one of the townhouses at the Project. The scaffolding was used by Maravilla and his crew to install siding on the homes. In the context of Chapter 95, "improvement" is broadly defined as "all additions to the freehold except for trade fixtures that can be removed without injury to the property." *See* [*Ineos USA, LLC v.*] *Elmgren*, 505 S.W.3d at 568. The townhouse at which Decedent and Paniagua were moving the scaffolding at the time of the accident was one of seven townhouses under construction at the time of the accident. These townhouses included cement driveways, including the cement driveway which Plaintiffs allege was energized by the T-Poles. Therefore, Plaintiffs' claims are claims for the death or injury of an employee of a subcontractor that arise from the condition of an improvement to real property where the subcontractor was constructing, repairing, renovating, or modifying the improvement.

(citations to record omitted).

Weekley contended plaintiffs could not meet their Chapter 95 burden to "establish that Weekley exercised or retained control over the manner in which Decedent and Paniagua performed their work and had actual knowledge of the danger or condition resulting in Decedent's death and Paniagua's alleged injuries."

Alternatively, Weekley argued that even if Chapter 95 is inapplicable, "Plaintiffs cannot produce any evidence, or, in the alternative, more than a scintilla of probative evidence, to prove their negligence, premises liability and/or gross negligence claims."

The evidence attached to Weekley's summary judgment motion included (1) declarations of Weekley's "builder for the project" John Holmes and Weekley's general counsel John Burchfield stating Weekley "owned the real property where the [project] was located, including the particular tract of land where the house under construction and involved in the incident at issue was located"; (2) excerpts from depositions of Mr. Paniagua, Leobardo, Mr. Holmes, and Weekley's operations and compliance manager Felipe Devora; and (3) plaintiffs' live petition.

Following a hearing,[5] the trial court ruled in Weekley's favor as described above without stating the basis for its ruling.

**Standard of review**

We review a summary judgment de novo. *Trial v. Dragon*, 593 S.W.3d 313, 316 (Tex. 2019); *Gore v. Smith*, No. 05-19-00156-CV, 2020 WL 4435312, at *2 (Tex. App.—Dallas Aug. 3, 2020, pet. denied) (mem. op.). A traditional motion for summary judgment requires the moving party to show that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX. R. CIV. P.

---

[5] The appellate record does not include a reporter's record.

166a(c); *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). We take evidence favorable to the nonmovant as true and we indulge every reasonable inference and resolve every doubt in the nonmovant's favor. *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 131 (Tex. 2019).

**Applicable law**

When applicable, Chapter 95 "limits a real property owner's liability for common-law negligence claims that arise out of a contractor's or subcontractor's work on an improvement to the property." *Energen*, 642 S.W.3d at 509. But Chapter 95 applies only to a claim

> (1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and
> (2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

TEX. CIV. PRAC. & REM. CODE § 95.002. If the defendant meets its burden of establishing both of these elements, Chapter 95 provides the plaintiff's "sole means of recovery" against the property owner, and the burden shifts to the plaintiff to establish the property owner's liability under the statute. *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 51 (Tex. 2015); *see* TEX. CIV. PRAC. & REM. CODE § 95.003 (shielding property owners from negligence liability absent actual or retained control or actual knowledge of and failure to adequately warn about danger or condition).

"[J]udicial admissions in an opposing party's pleadings may be used as evidence to support a summary-judgment motion." *Weekley Homes*, 646 S.W.3d at 828 (citing *Regency*, 622 S.W.3d at 819); *see also Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983) ("Assertions of fact, not pled in the alternative, in the live pleadings of a party are regarded as formal judicial admissions."). "[F]or summary judgment purposes, [a defendant] can rely on [the] plaintiffs' allegations to demonstrate the applicability of Chapter 95." *Weekley Homes*, 646 S.W.3d at 828.

**Analysis**

The supreme court's opinion in this case stated, "A critical disputed issue is whether the townhome and driveway comprise the same 'improvement' for Chapter 95 purposes." *Id*. at 827. The supreme court also stated, "As evidence of [Chapter 95's] second prong—that the claims here arise 'from the condition or use of an improvement to real property' that the workers were 'construct[ing], repair[ing], renovat[ing], or modif[ying]'—Weekley's summary-judgment motion relied only on statements in the plaintiffs' live petition to the effect that they 'were working' at the driveway and 'working at' the townhome construction site when the accident occurred." *Id*. at 825.

On remand, Weekley contends the petition's allegations constitute judicial admissions that satisfy its section 95.002(2) burden. Additionally, Weekley asserts, and we agree, that "in order for this Court to determine whether plaintiffs' pleadings judicially admit 95.002's second prong, the current framework of analysis for

95.002's second prong, in light of *Energen* and *Los Compadres*, has to be understood."

*Energen* involved a contractor, Elite Drillers, hired to drill a water well that would facilitate the operations of an oil well being drilled 500 feet away on the same property by another contractor. *Energen*, 642 S.W.3d at 507. The water well caught fire and exploded prior to its completion. Elite and others sued the property owner, Energen, contending negligent drilling at the oil well caused their injuries. Elite asserted, "Because it is undisputed that plaintiffs were hired to complete only the water well, they contend that the improvement from which their claim arose is different from the improvement they were hired to construct." *Id*. at 508. Energen argued Chapter 95 applied because plaintiffs' injuries also arose from a condition of the water well improvement. *Id*. Though the trial court granted summary judgment in favor of Energen, the court of appeals reversed, concluding Chapter 95 would apply only "if Energen conclusively established that the injuries arose from a premises defect of the Water Well." *Id*.

Our supreme court disagreed with the court of appeals. First, the supreme court explained:

> A "condition" is "an intentional or an inadvertent state of being." And something is a condition of an improvement if it "affect[s] the 'state of being' of" that improvement. In sum, Chapter 95 applies where negligence affecting the condition of an improvement on which plaintiffs were working was a cause of their damages.

*Id*. at 512 (citations omitted). Then, the supreme court reasoned:

Applying these principles, we conclude Energen has conclusively established that Chapter 95 applies. The record includes undisputed evidence that plaintiffs were hired to construct the water well, so it is the relevant improvement. . . . They also alleged that a "high volum[e] of natural gas" built up in the water well and ignited, resulting in an explosion that injured [the supervisor] and damaged Elite's equipment. In other words, plaintiffs' own petition alleges that their damages were caused by negligence arising from a dangerous condition of the water well on which they were working.

*Id.* The supreme court concluded, "Because plaintiffs alleged negligence regarding a dangerous condition of the water well on which they were working, their arguments for avoiding Chapter 95's application fall short." *Id*. at 514.

*Energen* cited and relied on *Los Compadres*, which involved a subcontractor hired to construct concrete foundation pilings for a four-unit residential condominium building. *Los Compadres*, 622 S.W.3d at 777. The construction process involved digging some twenty holes, each twenty-five feet deep, filling the holes with concrete, and inserting long metal reinforcement rods, commonly known as rebar, into each hole before the concrete dried. *Id*. After the crew had lifted a twenty-five-foot rebar segment and inserted the lower tip into the wet concrete in one of the holes, the rebar's upper tip contacted a high-voltage power line that hung along the property's border. *Id*. at 778. Several crew members were injured by electricity conducted through the rebar and sued the property owner, Los Compadres. *Id*. at 778. A jury found in favor of the plaintiffs and the court of appeals affirmed.

In the supreme court, Los Compadres argued that the jury's finding that it "knew or reasonably should have known" about an unreasonably dangerous condition could not support liability because Chapter 95 applied. *Id*. at 782. The supreme court began its analysis of Chapter 95's applicability by rejecting Los Compadres' argument that "the facts here satisfy [section 95.002(2)] because the power line was a dangerous condition of the 'workplace' on which [the crew members] were working when they were injured." *Id*. at 783. The supreme court stated:

> A workplace may include several different improvements, and each improvement may possess numerous conditions. Here, the energized power line hanging over the property was certainly a condition of the premises that constituted the workplace where the injuries occurred. . . . But by its express terms, chapter 95 applies only when the workplace is made unsafe by the condition (or use) "of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement." For chapter 95 to apply, it is not enough that a dangerous condition existed on the premises on which the claimant was working or created an "unsafe workplace." Instead, the danger must arise from the condition (or use) of "an improvement" within the workplace on which the claimant was working.

*Id*. (citing TEX. CIV. PRAC. & REM. CODE § 95.002(2)).

Next, the supreme court addressed the characterization of "the improvement" for Chapter 95 purposes. The supreme court stated:

> An improvement is any addition to real property, other than fixtures, that can be removed without causing injury to the real property. *Abutahoun v. Dow Chem. Co*., 463 S.W.3d 42, 49 (Tex. 2015) (quoting *Sonnier v. Chisholm–Ryder Co*., 909 S.W.2d 475, 479 (Tex. 1995)). The question is how broadly to define the "improvement" as chapter 95 uses

that term. *Ineos*, 505 S.W.3d at 568. Each piling [the crew members] installed on the premises could constitute an improvement to the real property. To the extent the pilings were part of the building's foundation, the foundation itself, including the pilings, could be considered a single improvement. And in the broadest sense, the entire condominium building could be considered a single improvement of which the foundation and its pilings were a part. *See id.* (holding connected furnaces were part of a single improvement—the "single processing system within a single plant on Ineos' property"). Here, [the crew] was hired to construct only the pilings, not the foundation or the building. That fact would suggest that we define the improvement narrowly, to include only the pilings, because the statute requires that the injury arise from the condition or use of the improvement that the contractor or subcontractor "constructs, repairs, renovates, or modifies."

*Id.* at 784.

The supreme court continued:

The question, then, is not whether the power line was a dangerous condition of the premises or the workplace, but whether it was a dangerous condition of the improvement on which [the crew members] were working when they were injured.
    We have defined "condition as "an intentional or inadvertent state of being. We have also recognized that items laying on or handing over real property can create or constitute a condition of the premises.
    But to constitute a condition of the improvement on which [the crew members] were working when they were injured, the power lines had to affect the "state of being" of the pilings they were hired to construct.

*Id.* at 784–85 (citations omitted).

The supreme court observed that though the power line originally "hung twenty-two to twenty-four feet above the ground and ten to twelve feet away from the piling hole," Los Compadres "constructed a retaining wall and added fill dirt to the property, significantly raising the ground level and decreasing that distance, at

–12–

least enough that the rebar was able to contact the concrete and the power line simultaneously." *Id*. at 785. The supreme court stated, "If a dangerous condition, by reason of its proximity to an improvement, creates a probability of harm to one who 'constructs, repairs, renovates, or modifies' the improvement in an ordinary manner, it constitutes a condition of the improvement itself." *Id*. at 785–86. The supreme court concluded, "Under these facts—in which the plaintiffs were directly exposed to the dangerous condition because of its close proximity to the improvement on which they were working—we conclude that the energized power line created a dangerous condition of the piling itself." *Id*. at 786. Thus, Chapter 95 applied. *Id*.

Here, the record shows that the only portion of Weekley's summary judgment motion that addressed section 95.002(2)'s requirement is the paragraph set out above. In support of that paragraph's assertion that "[t]hese townhouses included cement driveways, including the cement driveway which Plaintiffs allege was energized by the T-Poles," Weekley cited paragraph 13 of plaintiffs' live petition.

In its supplemental appellate brief on remand, Weekley quotes portions of the petition's paragraph 13, grants itself the substantial liberty of adding the word "townhome" to the plaintiffs' petition, and adds underscoring, all of which we reproduce as it appears in the brief, as follows:

> [Jose] and [Mr. Paniagua] were . . . independent contractors . . . of Defendant Weekley Homes, LLC <u>working at a job site</u> located at or near 5917 Evening Star Place, Dallas TX 75235—<u>new home construction project</u>. . . . Plaintiff Maravilla was storing scaffolding and during the process stepped on the concrete flooring or driveway that electrocuted

him to death. . . . <u>The cement floor or driveway where Plaintiffs were working</u> . . . was wet from rainfall which occurred immediately prior to or during the electrocution. There were not any warnings posted <u>about the [townhome] work-site/premise [sic]</u> that the temporary power poles and lines could cause <u>the surface area to become energized</u>.

Weekley's supplemental appellate brief also (1) cites plaintiffs' allegation in paragraph 14 of their petition that Weekley was negligent in "failing to warn Plaintiffs of a dangerous condition that existed" and (2) quotes an allegation from paragraph 18 of plaintiffs' petition with additional words added by Weekley within the quote and after it, as shown here in added italics: that "Weekley . . . 'fail[ed] to correct the dangerous condition that existed on the *[townhome]* premises' *that caused their damages*."

Weekley asserts that in *Energen*, the second prong of section 95.002 was established by judicial admissions showing (1) the water well was the relevant improvement and (2) gas from the gas well was the dangerous condition of the water well at which plaintiffs were working. Weekley contends that here the petition's assertions constitute judicial admissions "that the townhomes and adjacent driveway are the same improvement for section 95.002(2) purposes" and "that the alleged negligence regarded the condition of an improvement at which plaintiffs were working, and was a cause of their damages." Specifically, Weekley argues (1) "the record here includes undisputed evidence that Leobardo and his work crew were hired by Weekley to help construct the townhome" and (2) appellants asserted in their initial appellate brief "that 'the dangerous condition' is 'the wet concrete

surface of the driveway in stormy rainy weather outside the townhouse' 'becoming energized.'" Thus, Weekley contends, "under *Energen*, the townhome is the relevant improvement and the concrete driveway is the dangerous condition of the townhome at which plaintiffs were working."

Additionally, Weekley contends that in the above-described petition excerpts set out in its supplemental appellate brief, plaintiffs "allege . . . that Jose and Paniagua were 'working at' the townhome and 'were working' on the concrete driveway with a scaffold when this accident occurred." According to Weekley, based on the above-described, Weekley-edited petition excerpts taken together, "plaintiffs' own petition states that their damages were caused by negligence arising from a dangerous condition of the townhome at which they were working," and those assertions "constitute judicial admissions that the alleged negligence regarded the condition of an improvement at which plaintiffs were working, and was a cause of their damages." Weekley contends "these judicial admissions establish 95.002's second prong."

We disagree with Weekley. The petition merely states Jose and Mr. Paniagua were working at the project's "job site" and, while "storing scaffolds," stepped on a driveway that "electrocuted" them. Though plaintiffs state on appeal that the project included driveways "in front of" the townhomes, nothing in the petition shows plaintiffs constructed, repaired, renovated, or modified any driveway. Additionally, though the petition states the "driveway where Plaintiffs were working was near two

electrical poles," it does not (1) otherwise address or describe the driveway's location or (2) refer to the driveway as the "townhome work-site/premise," as Weekley does in its supplemental appellate brief.

To the extent Weekley's insertion of additional words into the petition excerpts and its rephrasing of the petition's allegations are meant to suggest inferences Weekley believes are proper, our summary judgment standard requires that we indulge every reasonable inference in the nonmovant's favor. *See Ortiz*, 589 S.W.3d at 131; *see also Regency*, 622 S.W.3d at 823–24 (noting that judicial admission must be "clear and unequivocal" to have conclusive effect) (quoting *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001)). Thus, we decline to conflate the driveway in question and Weekley's term "the townhome work-site/premise."

Additionally, to the extent Weekley's summary judgment motion relied on *Ineos USA, LLC v. Elmgren*, 505 S.W.3d 555 (Tex. 2016), for the proposition that "'improvement' is broadly defined as 'all additions to the freehold except for trade fixtures that can be removed without injury to the property,'" that case is distinguishable. *Ineos* involved a contractor injured while replacing a pipe valve on one of several furnaces connected to a processing system within a petrochemical plant. *Id*. at 568. Though the dangerous condition that injured the contractor arose from a different furnace on the system, the supreme court concluded the furnaces

"were all part of a single processing system" and the entire system was a single improvement for Chapter 95 purposes. *Id*.

By contrast, in *Los Compadres*—which, like the case before us, involved a multi-unit residential construction project rather than a petrochemical processing system—our supreme court noted the general definition described in *Ineos* but then proceeded to narrow the characterization of "the improvement" at issue. *Los Compadres*, 622 S.W.3d at 784. The supreme court reasoned that the *Los Compadres* plaintiffs were "part of a crew that was hired to construct only the pilings, not the foundation or the building," and "[t]hat fact would suggest that we define the improvement narrowly, to include only the pilings." *Id*.

Here, Jose and Mr. Paniagua were part of a crew hired to construct, repair, renovate, or modify only the townhomes' structures, not any driveways or surrounding concrete areas. Pursuant to *Los Compadres*, this "would suggest that we define the improvement narrowly," to include only the townhome structures. *Id*. We reject Weekley's contention that *Ineos* requires us to apply a different standard in this residential construction project case. *See id*.

Next, Weekley argues that though appellants "contend that the townhome and adjacent driveway are separate improvements for 95.002 purposes preventing the application of Chapter 95," "this contention is of no moment" because "a negligence/premises claim under 95.002's second prong can be based on negligence regarding a 'dangerous condition' of the property; without also showing a 'defect'

–17–

thereof." Weekley contends this case is "squarely in the framework of *Energen* and *Los Compadres*" because "[t]he townhome is not alleged to be defective; rather, the wet concrete surface of the driveway at the townhome becoming energized is the 'dangerous condition' that, according to plaintiffs, Weekley negligently failed to discover and warn about." In support of that contention, Weekley relies on the same purported "judicial admissions" described above.

Though we agree with Weekley that Chapter 95 can apply even where the improvement being worked on is not alleged to be defective, Weekley has not satisfied the requirements described in *Energen* and *Los Compadres*. In both of those cases, the supreme court (1) concluded Chapter 95 applied where negligence affecting the condition of an improvement plaintiffs were constructing, repairing, renovating, or modifying was a cause of their damages, and (2) stated "something is a condition of an improvement if it 'affect[s] the state of being of' that improvement." *See Energen*, 642 S.W.3d at 512–13; *Los Compadres*, 622 S.W.3d at 784–85. In *Energen*, which involved a water-well explosion, negligent drilling of a nearby oil well affected the state of being of the water well plaintiffs were working on. *Energen*, 642 S.W.3d at 514. In *Los Compadres*, which involved rebar in a piling becoming energized by contact with an overhead electrical wire, the state of being of the piling plaintiffs were constructing was affected. *Los Compadres*, 622 S.W.3d at 785–86.

Here, the petition alleged the injuries occurred when a driveway the workers stepped on while "storing scaffolds" became energized. Nothing in the record shows any townhome structure became energized at any time. To the extent Weekley contends the "wet concrete surface of the driveway at the townhome becoming energized" was a "condition" of the improvement Jose and Mr. Paniagua were constructing, repairing, renovating, or modifying, Weekley does not address or explain how the energized driveway, described only as being "near two electrical poles," "affect[ed] the state of being" of the townhome structures, nor does the record show that the evidence Weekley relies on conclusively established that requirement on its face. *See id.* at 785 ("But to constitute a condition of the improvement on which [the crew members] were working when they were injured, the power lines had to affect the "state of being" of the pilings they were hired to construct."); *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014) (explaining party moving for traditional summary judgment "had the burden to submit sufficient evidence that established on its face that 'there is no genuine issue as to any material fact' and that it is 'entitled to judgment as a matter of law'"); *see also Los Compadres*, 622 S.W.3d at 783 ("For chapter 95 to apply, it is not enough that a dangerous condition existed on the premises on which the claimant was working or created an 'unsafe workplace.'").

On this record, we conclude (1) plaintiffs' petition did not constitute a judicial admission that the energized concrete driveway was a dangerous condition of the

–19–

improvement Jose and Mr. Paniagua were constructing, repairing, renovating, or modifying, and (2) Weekley did not meet its burden to establish it was entitled to judgment as a matter of law regarding that requirement. *See Regency*, 622 S.W.3d at 823–24 (rejecting judicial admission argument where petition's allegations did not clearly and unequivocally address facts necessary to establish claim's elements); *see also Energen*, 642 S.W.3d at 512–14; *Los Compadres*, 622 S.W.3d at 784–86.[6] Thus, the trial court erred to the extent it granted summary judgment in Weekley's favor regarding Chapter 95's applicability. *See* TEX. R. CIV. P. 166a(c).

As described above, after the trial court granted summary judgment, it denied appellants' motions for (1) leave to late-designate experts regarding lightning activity at the time of the accident and (2) reconsideration and new trial. Though our original opinion ruled favorably to appellants on those matters, Weekley did not challenge those holdings on appeal to the supreme court. *See Weekley Homes*, 646

---

[6] In two recent opinions, other Texas courts of appeals acknowledged *Los Compadres's* "narrow" definition of improvement but nevertheless determined Chapter 95 conclusively applied. Those cases both involved facts and evidentiary postures substantially different from this case. *See Alba v. CalAtlantic Homes of Tex., Inc.*, No. 02-21-00345-CV, 2022 WL 1420542, at *7–8 & n.4 (Tex. App.—Fort Worth May 5, 2022, no pet.) (mem. op.) (concluding that where worker "hired to do masonry work on brick support columns at the ends of a balcony" fell from unfinished balcony when wooden 2x4 railing attached to column broke loose as he pressed against it while examining column, the "improvement" for purposes of Chapter 95 analysis was "the brick column itself," and summary judgment evidence, which included plaintiff's testimony regarding how loose 2x4's "close proximity" to brick column "created a dangerous condition of the brick column itself," showed condition affected column's state of being); *Martin v. WPP Props., LLC*, No. 12-20-00243-CV, 2021 WL 2816411, at *5–6 (Tex. App.—Tyler June 30, 2021, pet. filed) (mem. op.) (concluding that where worker hired to perform "make-ready" work in several units of apartment building was injured when he fell while carrying trash from an apartment "down the external staircase used to access the upstairs apartment," the improvement was "the building" housing the multiple apartments he was renovating, to which the staircase was attached, and thus he was injured by a condition or use of "part of the same improvement as the apartment").

S.W.3d at 825 n.2. Nor did appellants appeal this Court's adverse ruling on their gross negligence claims in the supreme court. *See id*. at 825 n.3.

For purposes of expediency, we adopt and incorporate the analyses and conclusions regarding the issues other than Chapter 95's applicability addressed on pages *8 through *14 of our original opinion. *See Paniagua*, 2021 WL 118663, at *8–14; *see also* TEX. R. APP. P. 47.1. Based on those conclusions and our conclusions above, we again affirm the trial court's summary judgment as to appellants' gross negligence claim, reverse the summary judgment as to appellants' negligence and premises liability claims, and remand this case to the trial court for further proceedings consistent with this opinion.

/Cory L. Carlyle/
CORY L. CARLYLE
190439f.p05                                  JUSTICE

–21–



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JOHN PANIAGUA AND HERMELINDA MARAVILLA CORONA, JOSE CAMERINO MARAVILLA, SR., AND MARGARITA MARAVILLA, INDIVIDUALLY, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSE CAMERINO MARAVILLA, DECEASED, AND AS NEXT FRIEND OF S.L.M.S., E.H., L.A.S., AND J.J.M., MINORS, Appellants

No. 05-19-00439-CV          V.

WEEKLEY HOMES, LLC, Appellee

On Appeal from the 298th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-19-02097. Opinion delivered by Justice Carlyle. Justices Molberg and Smith participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** in part and **AFFIRMED** in part. We **REVERSE** that portion of the trial court's judgment granting summary judgment as to appellants' negligence and premises liability claims, **AFFIRM** the trial court's judgment as to appellants' gross negligence claim, and **REMAND** this case to the trial court for further proceedings consistent with this Court's opinion.

It is **ORDERED** that appellants JOHN PANIAGUA AND HERMELINDA MARAVILLA CORONA, JOSE CAMERINO MARAVILLA, SR., AND MARGARITA MARAVILLA, INDIVIDUALLY, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSE CAMERINO MARAVILLA, DECEASED, AND AS NEXT FRIEND OF S.L.M.S., E.H., L.A.S., AND J.J.M.,

–22–

MINORS, recover their costs of this appeal from appellee WEEKLEY HOMES, LLC.

Judgment entered this 29th day of November, 2022.