# IN THE SUPREME COURT OF TEXAS

════════════

No. 15-0172

════════════

FIRST TEXAS BANK, PETITIONER,

v.

CHRIS CARPENTER, RESPONDENT

══════════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

══════════════════════════════════════════════════════

**Argued February 9, 2016**

CHIEF JUSTICE HECHT delivered the opinion of the Court.

Chapter 95 of the Texas Civil Practice and Remedies Code limits a property owner's liability for injuries to a contractor "who constructs, repairs, renovates, or modifies an improvement to real property".[1] The court of appeals held that a person cannot be a contractor without an "actual" contract to perform specific work for stated compensation.[2] We disagree. In the context of Chapter 95, a contractor is simply someone who works on an improvement to real property. Here, however, the contractor was not engaged in the work covered by the statute. Accordingly, we affirm the court of appeals' judgment but for different reasons.

---

[1] TEX. CIV. PRAC. & REM. CODE § 95.003.

[2] ___ S.W.3d ___ (Tex. App.—Austin 2014) (mem. op.).

First Texas Bank asked Chris Carpenter to investigate a leak in the Bank's roof. For years, Carpenter was the Bank's "go-to guy" for roof repairs. Carpenter reported that the roof had hail damage. The Bank decided to make an insurance claim and use the proceeds to repair the damage, and possibly make other repairs as well. The Bank asked Carpenter to show the insurance adjuster the damage. As Carpenter later testified:

> Q. So the general plan was to make an insurance claim, get the adjuster out there, point out to him all the damages and at least make the immediate hail-related damage repairs, and if possible, make some of these [other repairs] that you had previously proposed?
>
> A. Possibly take—right, maybe take the insurance proceeds. They may kick in more money to get the roofs completely redone.
>
> Q. And it was your understanding you were going to be the guy to be making those repairs. That's why they had you up there, correct?
>
> A. That made sense, yes, sir.

The Bank's roof has two tiers. Carpenter and the adjuster climbed to the first tier using Carpenter's ladder, then used a ladder the Bank had stored there to climb to the second tier. While descending from the second tier, Carpenter fell, crushing two vertebrae.

Carpenter sued the Bank, alleging that its ladder was defective. The Bank invoked Chapter 95, which "applies only to a claim: (1) against a property owner . . . for personal injury . . . to . . . a contractor . . . ; and (2) that arises from the condition or use of an improvement to real property where the contractor . . . constructs, repairs, renovates, or modifies the improvement."[3] Section 95.003 provides in part:

---

[3] TEX. CIV. PRAC. & REM. CODE § 95.002.

A property owner is not liable for personal injury . . . to a contractor, subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property . . . unless:

(1) the property owner exercises or retains some control over the manner in which the work is performed . . . ; and

(2) the property owner had actual knowledge of the danger or condition . . . and failed to adequately warn.[4]

The Bank contended that it could not be liable for Carpenter's injuries because it did not control his work or know of any defect in its ladder. In response, Carpenter argued that Chapter 95 is inapplicable because he had no contract with the Bank and was therefore not its contractor, and because he was not engaged in the work described by the statute at the time he was injured. The trial court granted summary judgment for the Bank.

The court of appeals reversed, holding that "Carpenter was not a 'contractor' as contemplated by the statute."[5] The court reasoned that "the ordinary meaning of 'contractor' requires that there be an actual contract under which one party (the contractor) has agreed to perform a specific kind of work or task and be compensated therefor by another party."[6] The record did not establish, the court continued,

that the parties had entered into a contract for Carpenter to make any particular repairs or perform any work on the roof, whether to repair the leak Carpenter initially identified or to repair the hail damage Carpenter discovered while investigating the leak. In fact, Carpenter testified that in discussing with Bank personnel a "plan" to file an insurance claim to fund the roof repairs, it was left undetermined whether the

---

[4] *Id.* § 95.003.

[5] ___ S.W.3d at ___.

[6] *Id.*

3

roof would be completely redone, depending on the amount of insurance proceeds received. Although Carpenter testified that he believed he would be the person to make whatever repairs the Bank decided to undertake, the parties had not yet gotten to the point of specifying what those repairs would entail, whether Carpenter would indeed be the person to do them, and what the terms of compensation would be.[7]

The court did not reach Carpenter's argument that Chapter 95 is also inapplicable because he was not injured while performing any of the work described in the statute.[8] The court remanded for further proceedings.

We granted the Bank's petition for review.[9]

Chapter 95 does not define "contractor", so we give the word its ordinary meaning unless a more precise meaning is apparent from the context of the statute.[10] *Black's Law Dictionary* defines "contractor" generally as "[a] party to a contract", supporting the court of appeals' conclusion and Carpenter's argument, but then adds, "[m]ore specif., one who contracts to do work for or supply goods to another . . . <a roofing contractor>", supporting the Bank's argument.[11] Other dictionaries give the same general and more specific definitions.[12]

---

[7] *Id.* at ___.

[8] *Id.* at ___ n.4.

[9] 59 Tex. Sup. Ct. J. 163 (Dec. 18, 2015).

[10] *Thompson v. Tex. Dep't of Licensing & Regulation*, 455 S.W.3d 569, 571 (Tex. 2014) ("[I]f an undefined term has multiple common meanings, it is not necessarily ambiguous; rather, we will apply the definition most consistent with the context of the statutory scheme."); *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("Undefined terms in a statute are typically given their ordinary meaning, but if a different or more precise definition is apparent from the term's use in the context of the statute, we apply that meaning.").

[11] BLACK'S LAW DICTIONARY 400 (10th ed. 2014).

[12] The *Oxford English Dictionary* defines "contractor" as "[o]ne who enters into a contract or agreement; a contracting party. . . . *spec.* [o]ne who contracts or undertakes to supply certain articles, or to perform any work or service . . . at a certain price or rate; in the building and related trades, one who is prepared to undertake work by contract." 3

Chapter 95 is not a statute regulating contracting in general but one prescribing the conditions under which an owner is liable to someone working on improvements to real property. Its applicability turns on the kind of work being done, not on whether an agreement for the work to be done is written, or formal, or detailed. Many agreements for such work are informal. In Carpenter's words, he was a "handshake guy" and worked for the Bank without "16 pages of contracts to paint or fix something." The statute covers not only contractors who have agreements with owners, but their employees, subcontractors, and their subcontractors' employees, none of whom would ordinarily have a contract with the owner. The statute cannot fairly be read to cover only contractors with formal written contracts, but still cover subcontractors and employees with no contracts at all with the owner.

As used in Chapter 95, a "contractor" is someone who makes improvements to real property. Carpenter was, by his own admission, the Bank's roofing contractor. As a matter of law, he was a "contractor" under Chapter 95. The court of appeals erred in concluding that Chapter 95 was, for that reason, inapplicable.

But Chapter 95 does not cover everyone injured while working on real property; it expressly covers only contractors, subcontractors, and their employees "who construct[], repair[], renovate[],

---

THE OXFORD ENGLISH DICTIONARY 837 (2d ed. 1989). *Webster's Third New International Dictionary* defines "contractor" as "one that contracts : a party to a bargain : one that formally undertakes to do something for another [:] one who contracts on predetermined terms to provide labor and materials and to be responsible for the performance of a construction job in accordance with established specifications or plans — called also *building contractor*". WEBSTER'S THIRD NEW INT'L DICTIONARY 495 (1961).

or modif[y] an improvement to real property".[13] The statute does not apply to one injured apart from such work.

The evidence before us does not establish that Carpenter's injury occurred while he was performing work described by Chapter 95. The Bank initially requested that Carpenter investigate a leak, and then when he found hail damage, asked him to show the insurance adjuster. In his original petition, Carpenter pleaded that "it was [his] understanding that he was to perform the needed repairs to the roof", not that the Bank had the same understanding. Carpenter testified only that "the general plan" was "possibly", "maybe", to use insurance proceeds to repair the hail damages, and "if possible", make other repairs to the roof, and that it "made sense" that he would get the job.

The Bank argues that roof repairs are a process, and that Carpenter was well into the work when he was injured. The Bank points to *Gorman v. Meng*, a case involving the electrocution death of a worker asked by a convenience store owner to investigate why customers were suffering electrical shocks when touching the doors to a walk-in cooler.[14] The trial court applied Chapter 95, and after trial to the bench, rendered judgment for the defendant.[15] The trial court found that the store owner had asked the decedent "'if he would be willing to look at the walk-in cooler'", and the decedent had "agreed to 'see if he could diagnose the electrical problem.'"[16] On appeal, the plaintiffs

---

[13] TEX. CIV. PRAC. & REM. CODE § 95.003.

[14] 335 S.W.3d 797, 800–801 (Tex. App.—Dallas 2011, no pet.).

[15] *Id.* at 801–802.

[16] *Id.* at 805.

made the same argument Carpenter makes here, that Chapter 95 was inapplicable because the decedent was not engaged in work covered by the statute. The court of appeals rejected the argument, concluding that, based on the trial court's findings, the decedent "was on the property for the purpose of determining what was causing the electrical shock to customers of the store coming in contact with the walk-in cooler, the first step of the repair process."[17]

We disagree that the findings on which the *Gorman* court relied supported its conclusion that the decedent's work was covered by Chapter 95. The diagnosis the decedent was asked to make *could* have been the first step of the repair process, as one might easily expect, but it need not have been. The present case is clearer. Had the Bank hired Carpenter to fix the roof, and a necessary first step was demonstrating hail damage to the adjuster and obtaining insurance proceeds, then he would have been engaged in repairing or modifying the roof, an improvement to real property. But the evidence does not come close to establishing those things. Rather, the evidence fairly shows that the Bank had never fully decided what, if any, repairs to make to the roof before Carpenter was injured. Had the insurance claim been denied, the Bank might have decided not to make any roof repairs. Carpenter might well have expected to get the job, if one was let, as he had before, but there is no evidence that the Bank had decided whom to hire.

---

[17] *Id.*

The record does not establish that the Bank had retained Carpenter to perform work covered by Chapter 95 at the time he was injured. Whether Chapter 95 applies remains in dispute, and the trial court erred in granting summary judgment for the Bank. For these reasons, the case must be remanded to the trial court for further proceedings. The judgment of the court of appeals is therefore

*Affirmed*.

Nathan L. Hecht
Chief Justice

Opinion delivered: June 10, 2016