# NO. 12-20-00243-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BOBBY MARTIN,*<br>*APPELLANT* | § | *APPEAL FROM THE 392ND* |
| *V.* | | |
| | § | *JUDICIAL DISTRICT COURT* |
| *WPP PROPERTIES, LLC, JENNIFER*<br>*M. WILLIAMS, WILLIAM R. PULLEY*<br>*AND ZACHARY D. PULLEY,* | | |
| *APPELLEES* | § | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Bobby Martin appeals the trial court's order granting summary judgment in favor of WPP Properties, LLC, Jennifer M. Williams, William R. Pulley, and Zachary Pulley. He presents five issues for our consideration. We affirm.

## BACKGROUND

In September 2017, Martin worked as an independent contractor at the Manor Terrace Apartment complex owned by WPP. Martin performed "make ready" work on certain apartments, which involved making vacated apartments ready for new tenants by removing old tenant's belongings, painting, replacing carpet, etcetera. Martin was injured while making a vacant upstairs apartment ready for new tenants. He was in the process of removing belongings and trash from the apartment, including a large piece of exercise equipment which he carried down the external staircase used to access the upstairs apartment. While carrying the exercise equipment and walking backwards down the stairs, Martin tripped, fell, and fractured his left hip. Thereafter, Martin sued WPP, Williams, and the Pulleys (collectively Appellees) on negligence and premises liability theories.

Appellees filed a hybrid no evidence and traditional summary judgment arguing that Chapter 95 of the Texas Civil Practice and Remedies Code shielded them from liability for Martin's injury.[1] The trial court granted summary judgment for Appellees because it found that Chapter 95 applies to Martin's claims and Appellees did not control Martin's work. This appeal followed.

## CHAPTER 95

In Martin's first and second issues, he argues that the trial court erred by granting summary judgment in favor of Appellees because Chapter 95 does not apply to his claims for the following reasons: (1) he was not performing the type of work contemplated by Chapter 95, and (2) he was not injured on the same improvement on which he was working at the time of his injury. Appellees argue that the trial court correctly interpreted and applied Chapter 95 because the evidence conclusively establishes that Martin was renovating an apartment at the time of his injury and Martin's claim is based upon Appellees' failure to provide a safe workplace.

In his third issue, Martin argues that, even if Chapter 95 applies, the trial court erred in granting summary judgment in favor of Appellees because he created a fact issue as to whether Appellees retained some control over his work and had actual knowledge of the defect in the staircase which caused his fall. Appellees counter that there was no evidence of retained control presented to the trial court and point to Martin's testimony in the record which affirmatively negates Martin's assertion that Appellees retained some control over his work.

**Standard of Review**

In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In reviewing a no-evidence summary judgment, we ascertain whether the nonmovant pointed out summary-judgment evidence raising a genuine issue of fact as to the essential elements attacked in the no-evidence motion. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206–08 (Tex. 2002). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable

---

[1] *See generally* TEX. CIV. PRAC. & REM. CODE ANN. § 95.001-.004 (West 2019).

jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

**Applicable Law**

Chapter 95 of the Civil Practice & Remedies Code limits a property owner's liability for negligence that causes personal injury to an independent contractor or its employee. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 95.001–.004 (West 2019). Chapter 95 applies to a claim:

(1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and

(2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

*Id*. § 95.002. The statute defines "claim" to mean "a claim for damages caused by negligence, including a counterclaim, cross-claim, or third party claim." *Id*. § 95.001(1). If Chapter 95 applies, the property owner is only liable if:

(1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and

(2) the property owner had actual knowledge of the danger or the condition resulting in the personal injury, death, or property damage and failed to adequately warn.

*Id*. § 95.003.

Under the common law, an independent contractor or its employee can recover against a property owner for premises liability or negligence if the owner exercised some control over the relevant work and either knew or reasonably should have known of the risk or danger. *See Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985) ("[W]hen the general contractor exercises some control over a subcontractor's work he may be liable unless he exercises reasonable care in supervising the subcontractor's activity."); *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex. 2000) ("[I]t follows that an owner or occupier is not liable for deterioration

3

of its premises unless it knew of or by reasonable inspection would have discovered the [danger].").  When Chapter 95 applies, however, it grants the property owner additional protection by requiring the plaintiff to prove that the owner "had actual knowledge of the danger or condition," so the owner is not liable based merely on what it reasonably should have known. TEX. CIV. PRAC. & REM. CODE ANN. § 95.003(2).  If Chapter 95 applies, it is the plaintiff's "sole means of recovery." *Abutahoun v. Dow Chemical Co.,* 463 S.W.3d 42, 51 (Tex. 2015).

**Qualifying Work**

Martin contends that Chapter 95 only applies to "certain workgroups" and that Martin is not a "qualifying contractor."  He further contends that he was not "constructing, repairing, renovating, or modifying the improvement" as required for the statute to apply.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 95.002.  Martin argues that he was merely taking out the trash and cleaning the recently vacated apartment and that this type of work is not contemplated by Chapter 95, as Martin contends that the "plain meaning of the statute is to protect owners from skilled contractors hired to perform the specified work, not this."

In support of his argument, Martin cites *First Texas Bank v. Carpenter*, 491 S.W.3d 729 (Tex. 2016) and *Moore v. Howmet Corporation*, CA 7:03-CV-0215-R, 2005 WL 856852 (N.D. Tex. Apr. 12, 2005).  In *Carpenter,* the Texas Supreme Court held that, in the context of Chapter 95, a person can be a "contractor" despite not having an actual contract to perform specific work for stated compensation.  491 S.W.3d at 730.  The supreme court held that a contractor is "simply someone who works on an improvement to real property."  *Id.*  In that case, a bank asked its regular roof repairman, Carpenter, to investigate a leak in the roof.  *Id.*  Carpenter investigated and determined the roof had hail damage, which prompted the bank to make an insurance claim.  *Id.*  The bank asked Carpenter to show the damage to the insurance claims adjuster, and while Carpenter was doing so, he fell from the roof and injured his spine.  *Id.* Carpenter sued the bank for damages related to his injuries, but the bank argued that Chapter 95 shielded it from liability under the facts of the case.  *Id.*  Carpenter, in turn, argued that Chapter 95 was inapplicable because he had no contract with the bank for the roof repair and was thus not an independent contractor.  *Id.* at 731.  As previously stated, the court rejected this argument, concluding that Carpenter was, by his own admission, the bank's roofing contractor and was a contractor as a matter of law under Chapter 95.  *Id.* at 732.  Carpenter further argued that he was not engaged in the work contemplated by Chapter 95 at the time of his injury.  *Id.*  The court

4

examined the summary judgment evidence and held that Carpenter was not performing the work described by Chapter 95 at the time he was injured because the evidence did not show that the bank had retained Carpenter to perform work covered by Chapter 95 at the time of the injury. *Id.* at 733. The court stated that the evidence fairly showed that the bank had never fully decided what, if any, repairs to make to the roof before Carpenter was injured and further, had the insurance claim been denied, the bank may not have made any repairs. *Id.* Moreover, no evidence in the record showed that the bank had decided whom to hire if they chose to make repairs. *Id.*

Martin argues that his case is similar to the facts of *Carpenter*:

> While it is possible Martin eventually could have been asked to conduct improvements in the vacated apartment – just like Carpenter may have later landed an "improvements" job with First Texas Bank – there is no evidence that Martin was yet conducting that type of work on the day of his injury; rather there is probative evidence that Martin had not yet even been asked to conduct any such improvements in that apartment.

Martin then points to portions of his affidavit and deposition testimony wherein he states that he was never asked to do anything in the apartment but "clean it out."

Appellees, in turn, argue that the summary judgment evidence establishes that no genuine issue of material fact exists relative to Martin's active engagement in the renovation of Appellees' apartments to make them ready for new tenants at the time of the accident. We agree. Because the statute does not define the term "renovate," we may refer to the dictionary to discern its plain meaning. The dictionary defines the term "renovate" to mean "to restore to a former better state (as by cleaning, repairing, or rebuilding)."[2] Merriam-Webster's Collegiate Dictionary 1054 (11th ed. 2011). The record contains excerpts from Martin's deposition testimony wherein he testified that he worked as an independent contractor for the previous owners of the apartment complex doing "make ready" work. Martin testified that he continued to do make ready work as an independent contractor for Appellees after they acquired the property from the previous owner. Martin acknowledged that Appellees hired him as an independent contractor to "make

_____

[2] Our objective in construing a statute is to give effect to the legislature's intent, which requires us to first look to the statute's plain language. *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017). If the statute's language is unambiguous, we interpret the statute according to its plain meaning. *Id.* To determine a term's common, ordinary meaning, we typically look first to the dictionary definitions. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018).

ready certain apartments as they became empty" and further, Martin admitted that he was injured coming down the stairs "during a process of a make-ready for an apartment." Martin explained that when people vacated an apartment, he would go in to update and refresh the apartment to make it ready for new tenants. We conclude that *Carpenter* does not support Martin's argument. Martin was actively working for Appellees renovating apartments to make them ready for new tenants, unlike Carpenter who was simply showing a claims adjuster the damage in anticipation of future work. *Carpenter*, 491 S.W.3d at 733.

Martin also relies on *Moore* for his contention that he was not engaged in "qualifying work" for Chapter 95 to apply. 2005 WL 856852, at *2. In *Moore*, the plaintiff was employed by a company which provided maintenance and janitorial services to the defendant. *Id.* Moore sued Howmet alleging he was injured when he fell while attempting to change an air filter on Howmet's premises. *Id.* Howmet moved for summary judgment based on Chapter 95, but Moore argued the defense did not apply because he was not constructing, repairing, renovating, or modifying an improvement to real property as required by Section 95.002(3). *Id.*; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 95.002(3). The federal district court held that Chapter 95 applies only in those situations where a property owner hires "someone with expertise to repair or renovate some improvement on their property" and that individual is injured while performing work on the property owner's premises and denied Howmet's motion for summary judgment. *Moore*, 2005 WL 856852, at *2. The court concluded that Chapter 95 does not apply where the property owner hires someone to perform routine work that is neither dangerous nor requires the knowledge of an expert. *Id.*

However, the court's reasoning that Chapter 95 only applies to inherently dangerous work or work that requires the knowledge of an expert is not found in the statutory language. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 95.002-.003; *see also* ***Montoya v. Nichirin-Flex, U.S.A., Inc.***, 417 S.W.3d 507, 514 (Tex. App.—El Paso 2013, no pet.) (declining to follow the reasoning in *Moore* because its holding grafts limitations on the application of Chapter 95 not found in the statute). Moreover, Martin has not cited any authority other than *Moore* that has similarly limited Chapter 95 to claims involving only inherently dangerous work or work that requires expertise. Nor is this Court aware of any such authority. Thus, we decline Martin's invitation to limit the applicability of Chapter 95 in this way.

6

**Same Improvement**

Martin contends that the trial court erred in granting summary judgment in favor of Appellees pursuant to Chapter 95 because he was injured while descending the staircase, not working in the apartment. Thus, Martin contends he was not injured on or by the "same improvement" on which he was working as required for Chapter 95 to apply. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 95.002 ([t]his chapter applies only to a claim...that arises from the condition or use of an improvement to real property...). Martin argues that because his claims are not connected to the condition of the vacant apartment or anything in it, and he was never asked to construct, repair, renovate, or modify the staircase, Chapter 95 is inapplicable.

Martin cites ***Hernandez v. Brinker International, Incorporated***, 285 S.W.3d 152 (Tex. App.—Houston [14th Dist.] 2009, no pet.) to support his argument. In ***Hernandez***, the court was asked to determine whether Chapter 95 applied to a premises-liability claim from an independent contractor who was injured while repairing an air conditioner that was attached to the roof of a building. *Id.* at 153. The contractor's injury arose from a defect in the roof, which collapsed as the contractor was repairing the air conditioner. *Id.* at 154. The court held that Chapter 95 did not apply to the contractor's claim because the roof and the air conditioner were different improvements, and the claim arose from a condition of the roof, which the contractor had not been hired to repair. *Id.* Appellees, in turn, rely on ***Torres v. Chauncey Mansell & Mueller Supply Company, Incorporated***, 518 S.W.3d 481 (Tex. App.—Amarillo 2017, pet. denied) to argue that Chapter 95 applies because Martin's claims arise from its alleged failure to provide a safe workplace. According to Appellees, Chapter 95 applies when a claim arises from the alleged failure to provide a safe workplace, regardless whether the claim arises from the use or condition of an improvement to real property.

Prior to the Texas Supreme Court's decision in ***Ineos USA, LLC v. Elmgren***, 505 S.W.3d 555 (Tex. 2016), several courts reasoned that Chapter 95 "does not require that the defective condition be the object of the contractor's work" as long as the injury arose from a condition of the "workplace." *See, e.g., **Fisher v. Lee & Chang P'ship***, 16 S.W.3d 198, 201 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) ("The ladder was an unsafe part of appellant's workplace, and his injury arose from the failure to provide a safe workplace."), *disapproved of on other grounds by **Ineos***, 505 S.W.3d 555; *see also **Clark v. Ron Bassinger, Inc.***, No. 07-03-0291-CV, 2006 WL 229901, at *2 (Tex. App.—Amarillo Jan. 31, 2006, no pet.) (mem. op.) ("[A]lthough

7

the covered skylight opening was not the object of Clark's work, it was an unsafe part of his workplace and his injury arose from the failure to provide him a safe workplace.").  In **Ineos,** the court cited to **Hernandez** and held that "Chapter 95 only applies when the injury results from a condition or use of the same improvement on which the contractor (or its employee) is working when the injury occurs." 505 S.W.3d at 567.  However, the court went on to discuss its interpretation of "improvement":

> Chapter 95 does not define improvement, but we have broadly defined an improvement to include all additions to the freehold except for trade fixtures that can be removed without injury to the property.  Following our "broad" construction of an improvement...we disagree with the Elmgrens' argument. The valves and furnaces, though perhaps "separate" in a most technical sense, were all part of a single processing system within a single plant on Ineos' property. Even the Elmgrens acknowledged this by alleging in their petition that furnace 101B was on "the common header system." As the court of appeals observed, "what the Elmgrens would have us do is attempt to divide the plant's 'gas process' system of furnaces and headers valve-by-valve or line-by-line into separate, discreet improvements." We agree with the court of appeals that the evidence conclusively establishes that the entire system was a single "improvement" under Chapter 95.

**Id.** at 568 (internal citations omitted).

After **Ineos**, the supreme court decided **Los Compadres Pescadores, L.L.C. v. Valdez**, 19-0643, 2021 WL 1148228 (Tex. Mar. 26, 2021).  In **Valdez**, two contractors were hired by the property owner to supervise and manage the construction of a four unit condominium.  2021 WL 1148228, at *1.  The contractors were injured when they were constructing the foundation, which required them to insert long metal reinforcement rods, commonly known as rebar, into holes they drilled into concrete pilings buried underground.  **Id.**  at *2.  A high voltage power line hung above the worksite, and while the contractors were lifting the rebar and placing one end into the concrete, the other end contacted the power line.  **Id.**  Electricity shot down the rebar, threw the contractors off their feet, knocked them unconscious, and burned their hands and feet.  **Id.**  The property owner argued that the power line was a dangerous condition of the "workplace" on which the contractors were working when they were injured.  **Id.** at *6.  The court rejected the argument based on the express language of Chapter 95, holding "it is not enough that a dangerous condition existed on the premises on which the claimant was working or created an 'unsafe workplace'...[i]nstead, the danger must arise from the condition (or use) of 'an improvement' within the workplace on which the claimant was working."  **Id.**  The court

explained that an improvement is an "addition to real property," and a "workplace" is merely the location in which a worker constructs an improvement. *Id.* With that clarification, the court reasoned that the question is not whether the power line was a dangerous condition of the premises or the workplace, but whether it was a dangerous condition of the improvement on which the contractors were working when they were injured. *Id.* at *7. The court concluded that the evidence established that the energized power line created a dangerous condition of the piling itself, by reason of its proximity to the pilings. *Id.* at n.8.

> Under these facts—in which the plaintiffs were directly exposed to the dangerous condition because of its close proximity to the improvement on which they were working—we conclude that the energized power line created a dangerous condition of the piling itself.

*Id.* at *8.

Based upon the holdings in *Ineos* and *Valdez* we agree with Martin's contention that, for Chapter 95 to apply, the contractor's injury must result from a condition or use of the same improvement on which the contractor is working when the injury occurs. 505 S.W.3d at 567; 2021 WL 1148228, at *6. Further, based upon the holdings in *Ineos* and *Valdez* we reject Appellee's contention that Chapter 95 is applicable simply because the claim arises from the owner's alleged failure to provide a safe workplace. 505 S.W.3d at 567; 2021 WL 1148228, at *6.

However, we disagree with Martin's argument that the external staircase constitutes a different improvement than the apartment. In *Valdez*, the court noted that an improvement is any addition to real property, other than fixtures, that can be removed without causing injury to the real property. 2021 WL 1148228, at *7. Thus, the court reasoned that the question is how broadly to define the term "improvement" as Chapter 95 uses that term. *Id.*

> To the extent the pilings were part of the building's foundation, the foundation itself, including the pilings, could be considered a single improvement. And in the broadest sense, the entire condominium building could be considered a single improvement of which the foundation and its pilings were a part. Here, Valdez and Teran were part of a crew that was hired to construct only the pilings, not the foundation or the building. That fact would suggest that we define the improvement narrowly, to include only the pilings, because the statute requires that the injury arise from the condition or use of the improvement that the contractor or subcontractor "constructs, repairs, renovates, or modifies." And, in fact, Paredes and his crew constructed only the pilings, not the foundation or the building.

9

*Id.* (internal citations omitted).

The analysis and holdings in ***Ineos*** and ***Valdez*** compel our conclusion that the external staircase is part of the same improvement as the apartment. Unlike the contractors in ***Valdez***, who were hired to construct only the concrete pilings, the evidence in this case establishes that Martin was renovating several apartments on the day of his injury. Thus, the object of his work was the renovation of multiple apartments within the complex, which would require him to move about the complex, walking up and down stairs to access the upstairs apartments. This fact suggests a broader definition of improvement. *But c.f.* ***Valdez***, 2021 WL 1148228, at *7 (the fact that contractors were hired only to work on concrete pilings, not the foundation or building, supported a narrow definition of word "improvement"). The evidence shows that Martin accessed the upstairs apartment he was renovating just prior to his fall via an external staircase that was attached to a building containing four apartments, two upstairs and two downstairs. While in the process of renovating the upstairs apartment, he climbed down the external staircase to transport the old tenant's belongings out of the apartment. The record shows that the apartment complex consisted of several buildings housing separate apartment units. Due to the nature of Martin's work, which required him to clean out apartments and make them ready for new tenants, we construe the improvement in this case to be the building housing the apartment in which he was working. The staircase Martin fell down is attached to the building that houses the apartment. Thus, we conclude that the staircase is part of the same improvement, i.e., the building, as the apartment. *See* ***Ineos***, 505 S.W.3d at 568; *see also* ***Valdez***, 2021 WL 1148228, at *8. Therefore, we overrule Martin's first and second issues.

## Control and Knowledge

When Chapter 95 applies to a claim, the plaintiff has the burden to prove both control and knowledge. TEX. CIV. PRAC. & REM. CODE ANN. § 95.003. The requisite control can be contractual or actual. ***Union Carbide Corp. v. Smith***, 313 S.W.3d 370, 375 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). For the property owner to be liable under Chapter 95, the owner must have the right to control the means, methods, or details of the independent contractor's work to the extent that the independent contractor is not entirely free to do the work his own way. ***Ellwood Tex. Forge Corp. v. Jones***, 214 S.W.3d 693, 700 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). The right to control the work must extend to the operative detail of the contractor's work. *Id.* Further, the control must relate to the injury the negligence causes;

10

it is not enough that the owner has the right to order the work to stop and start or to inspect progress or receive reports. ***Id.*** Nor is it enough for the owner to recommend a safe manner for the independent contractor's employees to perform the work. ***Id.***

It is undisputed that Appellees did not have a contractual right of control. Martin argues that he met his burden to establish that Appellees retained actual control over his work because "[o]n other general projects, [Appellees] would control specifics including painting, carpet, etc...[i]n fact, [Appellees were] often present directing Martin's work...[f]or this clean-out project, [Appellees] controlled some portions of the work, including specifics in certain projects." To support this contention, Martin cites to a page in his deposition testimony and paragraph five of an affidavit he included in his response to Appellees' motion for summary judgment. The cited page of Martin's deposition testimony reads as follows:

> Q: Okay. And so when you were – when you were showing up to do the make-readies that you were hired to do, would you go in and know what to do?
>
> A: I know what to do, but I didn't know what their budget was and how much they wanted to do.
>
> Q: And would – would somebody from WPP Properties instruct you, "Hey this is what" – "This is what we want done. We want painting, we want carpet, we want" –
>
> A: Yes. Zach.
>
> Q: So Zach would tell you, in general, "These are the things I want you to work on. These are the things I want you to fix?"
>
> A: Right.
>
> Q: And you would do those things?
>
> A: Yes, sir.
>
> Q: And you'd do those on your own, correct?
>
> A: Zach was there a lot, but not – I mean, I was by myself more than—but there was other people that would help, and Zach was there working on them, too.
>
> Q: All right. But Zach wasn't directing and controlling how you did your work, was he?
>
> A: Not to the specific, "I want you to this[…]"

The last question on the cited page does not contain Martin's full answer, and the continuation of that page is not in the record. Paragraph five of Martin's affidavit reads as follows:

I was injured on the property of Manor Terrace apartments on September 11, 2017. That day I was painting in one apartment at the complex. I called Zach Pulley to ask about paint colors, and he instructed me to leave that apartment and begin work in another apartment – either 14 or 15. I cannot recall the exact number, but it was the apartment directly upstairs above my apartment no. 13.

Appellees, in turn, point to portions of Martin's deposition testimony included in the summary judgment record that reads as follows:

Q: Right, right. He was telling you—

A: Yes, sir.

Q: -- scope of the project.

A: Yes, sir.

Q: And that's why in your lawsuit, you said you were an independent contractor for WPP Properties, correct?

A: Yes.

Q: And that's all I'm trying to confirm. So even though Zach was there from day to day, he wasn't directing and controlling your work, true?

A: True.

Q: All right. And the things you were hired to just from whatever general description he would give you? Painting –

A: Yes.

Q: -- clutter removal, cabinet fixing, whatever it was, correct?

A: Yes.

Based on the foregoing evidence, we conclude that Martin did not create a fact issue with respect to control. Martin's testimony establishes that Appellees did not control the means, methods, or details of his work. Martin's testimony establishes that Appellees did not retain control over his work beyond ordering him to stop and start and/or inspect progress and receive reports. We have concluded that the trial court correctly found that Chapter 95 applies to Martin's claims. Thus, Martin was obligated to demonstrate that a fact issue remained as to whether Appellees retained control over his work and had actual knowledge of the alleged dangerous condition. *Willrich*, 28 S.W.3d at 23. We conclude that Martin did not meet his burden because the evidence conclusively establishes that Appellees did not retain control over

Martin's work. Because Martin was required to create a fact issue on both control and actual knowledge, we need not discuss whether he demonstrated a fact issue with respect to actual knowledge. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 95.003; *see also* TEX. R. CIV. P. 47.1. Therefore, we overrule Appellant's third issue.

#### CONCLUSION

We overrule Martin's first, second and third issues. Because we hold that Chapter 95 applies to Martin's claims, we need not address his fourth and fifth issues.[3] We affirm the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered June 30, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

---

[3] Martin's fourth and fifth issues are predicated upon his assertion that Chapter 95 does not apply to his claims and relate to whether he demonstrated a fact issue exists on his causes of action for negligence and premises liability.



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JUNE 30, 2021**

**NO. 12-20-00243-CV**

**BOBBY MARTIN,**
Appellant
V.
**WPP PROPERTIES, LLC, JENNIFER M. WILLIAMS,**
**WILLIAM R. PULLEY AND ZACHARY D. PULLEY,**
Appellees

Appeal from the 392nd District Court
of Henderson County, Texas (Tr.Ct.No. CV-19-0397-392)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are adjudged against the Appellant, **BOBBY MARTIN**, for which let execution may issue and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

14