

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00345-CV

_____

JOSE ALBA, CANDELARIA ALBA, JOSE ALBA, JR., AND LIZBETH
GURRUSQUIETA, Appellants

V.

CALATLANTIC HOMES OF TEXAS, INC., LENNAR CORPORATION, AND
LENNAR PACIFIC PROPERTIES MANAGEMENT, INC. D/B/A VILLAGE
BUILDERS, Appellees

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 19-9952-16

Before Kerr, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Womack
Concurring and Dissenting Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

## I. INTRODUCTION

In this personal injury case, Appellants Jose Alba, Candelaria Alba, Jose Alba, Jr., and Lizbeth Gurrusquieta (collectively, the Albas) sued Appellee CalAtlantic Homes of Texas, Inc. (CalAtlantic) and Lennar Corporation and Lennar Pacific Properties Management, Inc. d/b/a Village Builders (collectively, Lennar) for negligence as a result of Jose Alba's[1] fall at a jobsite. Relying on Chapter 95 of the Texas Civil Practice and Remedies Code, CalAtlantic and Lennar moved for summary judgment. After the trial court granted the motion, the Albas filed this appeal. In what we construe as two issues, the Albas argue that CalAtlantic did not prove (1) that it was a "property owner" under Chapter 95 and (2) that Jose's injuries were the result of a condition or use of the same improvement on which he was working when injured. We will affirm the trial court's judgment.

## II. BACKGROUND

While working construction on a residential house in Frisco, Texas, on October 18, 2017, Jose went upstairs to the second floor to look at a balcony area with two sides that were open to the outside. As he looked at some strings that were hanging down from the top of a column, Jose's leg pressed against two 2 x 4 cross supports when the top 2 x 4 came loose at one end. Jose lost his balance, fell fifteen

---

[1]Because there are several individuals with the surname Alba referenced in this appeal, we will refer to Jose throughout this opinion by his first name only.

to twenty feet, and landed on part of the foundation and construction materials below. According to Jose, he was "seriously injured as a result of [the] fall, including suffering a major head/brain injury."

Two years later, the Albas sued CalAtlantic and Lennar, alleging negligence. In their pleadings, the Albas contended that CalAtlantic was the "owner of the jobsite premises" and Lennar was the "general contractor on the jobsite premises."

CalAtlantic and Lennar answered the lawsuit and asserted several affirmative defenses, including that the claims were barred by Chapter 95 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 95.001–.004. They also filed a third-party petition seeking contribution against the subcontractor on the project, Perez Masonry Construction, LLC, claiming that Jose was working for Perez Masonry at the time of his fall.

Almost seven months after the lawsuit was filed, CalAtlantic and Lennar moved for traditional and no-evidence summary judgment, with Lennar claiming it was "not involved in the construction project in any way" and CalAtlantic asserting that it was not liable pursuant to Chapter 95. *See id.* Specifically, CalAtlantic stated that summary judgment was proper as to it because:

- The evidence establishes CalAtlantic did not retain or exercise control over how Jose performed his work;

- There is no evidence CalAtlantic exercised or retained control over how Jose's work was performed; and

3

- There is no evidence CalAtlantic specifically approved of or had actual knowledge of the allegedly dangerous condition Jose claims caused the accident in question.

The Albas responded to the motion, and CalAtlantic and Lennar filed a reply. The trial court granted the motion without specifying the grounds for its judgment. Subsequently, the Albas filed a motion for new trial—which was overruled by operation of law—and CalAtlantic and Lennar nonsuited their claims against third-party defendant Perez Masonry. This appeal followed.

## III. DISCUSSION

On appeal, the Albas complain only about the summary judgment in favor of CalAtlantic. Specifically, they assert that the trial court erred by granting CalAtlantic's motion for summary judgment because (1) CalAtlantic failed to prove that it was a property owner under Texas Civil Practice and Remedies Code Section 95.001(3) and a fact issue exists as to whether the property owned was primarily used for commercial or business purposes, and (2) CalAtlantic failed to prove as a matter of law under Texas Civil Practice and Remedies Code Section 95.002 that Jose's injuries were the result of a condition or use of the same improvement on which he was working when he was injured.

### A. Summary Judgment Standard of Review

In their brief, the Albas argue that the only applicable standard of review is for a traditional motion for summary judgment. They state that because CalAtlantic "has the burden of establishing that Chapter 95 applies to the claims of [the Albas]," and

4

"[b]ecause a party may not obtain a no-evidence summary judgment on an issue for which it bears the burden of proof," CalAtlantic's motion for summary judgment "should be construed as a motion for traditional summary judgment."

But in this case, both standards apply. Once Chapter 95's applicability was established by CalAtlantic, the burden was on the Albas to establish (1) that CalAtlantic exercised or retained control over how Jose's work was performed and (2) that CalAtlantic specifically approved or had actual knowledge of the allegedly dangerous condition Jose claims to have caused the accident. *See Energen Res. Corp. v. Wallace*, No. 20-0451, 2022 WL 726976, at *8 (Tex. Mar. 11, 2022) (stating that once a movant establishes the applicability of Chapter 95, the burden is on the plaintiffs to satisfy both prongs of section 95.003 if a no-evidence motion for summary judgment is involved); *Cantu v. C & W Ranches, Ltd.*, 631 S.W.3d 434, 438–39 (Tex. App.—San Antonio 2021, pet. granted, judgm't vacated and remanded by agr.) (stating that "[t]he facts of the instant case are unusual in that to be entitled to summary judgment, [the movant] needed to succeed on *both* its traditional and no-evidence grounds").

We review a trial court's decision to grant summary judgment de novo. *Hillis v. McCall*, 602 S.W.3d 436, 439 (Tex. 2020); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubt in the nonmovant's favor. *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 811 (Tex. 2019).

5

In a traditional motion, the party moving for summary judgment has the burden to prove that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). In contrast, once a no-evidence motion is filed, the burden shifts to the respondent to present evidence raising an issue of material fact to the elements specified in the motion upon which the respondent would have the burden of proof. Tex. R. Civ. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

In reviewing both traditional and no-evidence summary judgments, we consider the evidence in the light most favorable to the nonmovant. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009). Where the trial court's order granting summary judgment does not specify the grounds relied on, we affirm if any of the summary judgment grounds are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

## B. Application of Texas Civil Practice & Remedies Code Chapter 95

Chapter 95 of the Civil Practice and Remedies Code protects property owners against liability to contractors, subcontractors, and their employees under certain circumstances. Tex. Civ. Prac. & Rem. Code Ann. §§ 95.001–.004; *Ineos USA, LLC v. Elmgren*, 505 S.W.3d 555, 559 (Tex. 2016). Chapter 95 applies to a claim:

(1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and

6

> (2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

Tex. Civ. Prac. & Rem. Code Ann. § 95.002.

Chapter 95 does not create a new cause of action; rather, it limits liability for common-law negligence claims when it applies. *Energen*, 2022 WL 726976, at *5 (referencing Tex. Civ. Prac. & Rem. Code Ann. § 95.003, which provides that a property owner "is not liable . . . unless" certain requirements are met). While a landowner generally owes a duty to warn business invitees of a dangerous condition on the premises when the owner knows or should know the condition exists, in Chapter 95 cases, a premises owner must "adequately warn" a contractor of a danger only when the landowner knows of the condition and exercises some control over the manner in which the work is performed. *SandRidge Energy, Inc. v. Barfield*, No. 20-0369, 2022 WL 815864, at *1 (Tex. Mar. 18, 2022). Section 95.001 defines a "property owner" as "a person or entity that owns real property primarily used for commercial or business purposes." Tex. Civ. Prac. & Rem. Code Ann. § 95.001. If Chapter 95 applies, it is the plaintiff's "sole means of recovery." *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 51 (Tex. 2015).

Here, the Albas contend that Chapter 95 does not apply because (1) CalAtlantic is not a "property owner," and (2) Jose's injuries were not the result of a condition or use of the same improvement on which he was working when injured. Because they

7

raise no other complaints, if CalAtlantic proved the applicability of Chapter 95, we must affirm the summary judgment.

### 1. CalAtlantic was a "property owner."

The Albas assert in their first issue that CalAtlantic offered no evidence that the property it owned was used for "commercial or business purposes." CalAtlantic responds that there are no cases interpreting that part of the definition and that the Albas' "contention is simply an unsupported statement that is inconsistent with the evidence." We agree.

As with previous interpretations of Chapter 95, "'[w]hen construing a statute, we begin with its language.'" *Abutahoun*, 463 S.W.3d at 45 (quoting *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006)). And in deciding whether the property was used for "commercial or business purposes," we are guided by the plain meaning of the words. *See id.* at 47 ("We read Chapter 95 to be unambiguous, and therefore we apply its plain meaning as the statute is written."); *see also Ineos*, 505 S.W.3d at 565 (stating that "our task is to construe Chapter 95 as written.").

Because Chapter 95 does not define "commercial or business purposes," we give the word its ordinary meaning unless a more precise meaning is apparent from the context of the statute. *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex. 1993) (stating that where the Legislature fails to define a specific word in a statute, courts must apply its ordinary meaning); *see First Tex. Bank v. Carpenter*, 491 S.W.3d 729, 731 (Tex. 2016) (looking at the ordinary meaning of the word

8

"contractor" in Chapter 95). Black's Law Dictionary defines "commercial" as "[o]f, relating to, or involving the buying and selling of goods" and "[o]f, relating to, or involving the ability of a product or business to make a profit." *Commercial*, Black's Law Dictionary (11th ed. 2019); *see Ineos*, 505 S.W.3d at 563 (looking at Black's Law Dictionary to construe the words "entity" and "person" in Chapter 95); *First State Bank*, 491 S.W.3d at 731 (looking at Black's Law Dictionary to construe the word "contractor" in Chapter 95). "Business" means "[a] commercial enterprise carried on for profit; a particular occupation or employment habitually engaged in for livelihood or gain." *Business*, Black's Law Dictionary (11th ed. 2019).

We are also guided by recent cases identifying "property owners" under the statute. Other "property owners" under the statute have included an entity building condominiums to sell as residential apartments, *see Los Compadres Pescadores, L.L.C. v. Valdez*, 622 S.W.3d 771, 777 (Tex. 2021), and an entity building new homes to sell, *see Alonso v. Westin Homes Corp.*, No. 14-15-00898-CV, 2016 WL 7234474, at *1 (Tex. App.—Houston [14th Dist.] Dec. 13, 2016, no pet.) (mem. op.); mineral lease owners, *see Rosa v. Mestena Operating, LLC*, 461 S.W.3d 181, 184 (Tex. App.—San Antonio 2014, pet. denied); a bank, *Carpenter v. First Tex. Bancorp*, 492 S.W.3d 326, 327 (Tex. App.—Austin 2014), *aff'd sub nom. First Tex. Bank v. Carpenter*, 491 S.W.3d 729 (Tex. 2016); an automotive supplier, *Montoya v. Nichirin-Flex, U.S.A., Inc.*, 417 S.W.3d 507, 511 (Tex. App.—El Paso 2013, no pet.); and an apartment complex owner and manager, *Segovia v. Skyline Place Dallas, LLC*, No. 05-11-00895-CV, 2013 WL 3951509,

9

at *1 (Tex. App.—Dallas Aug. 1, 2013, no pet.) (mem. op.). In these cases, the record conclusively established that the defendant was a "property owner," *see Montoya*, 417 S.W.3d at 511; *Segovia*, 2013 WL 3951509, at *3; the parties agreed—or no one disputed—that the defendant was a "property owner," *see Los Compadres*, 622 S.W.3d at 782; *Alonso*, 2016 WL 7234474, at *2; *Carpenter*, 492 S.W.3d at 328 n.2; *Rosa*, 461 S.W.3d at 184; or the issue was not raised in the trial court and thus was unpreserved for appeal, *see Clark v. Ron Bassinger, Inc.*, No. 07-03-0291-CV, 2006 WL 229901, at *1 (Tex. App.—Amarillo Jan. 31, 2006, no pet.) (mem. op.).[2]

Here, the Albas concede on appeal that CalAtlantic's "motion for summary judgment, and the affidavits in support of it, show that it owned the property in Frisco, Texas, and that the real property was primarily being used to construct a residence." Nevertheless, they contend that there is no evidence to support that the property "was primarily used for commercial or business purposes." However, this ignores the affidavit of CalAtlantic's construction manager, the admissions by the Albas in their pleadings, and the affidavit of Jose filed in response to the motion for summary judgment.

---

[2]In *Clark*, Ron Bassinger, Inc. (RBI) "was constructing, as a general contractor, a residence on a lot owned" by it. 2006 WL 229901, at *1. The plaintiff was an employee of the independent plumbing contractor on the project, and he sued RBI after he fell through a skylight opening. *Id.* On appeal, the plaintiff argued that Chapter 95 created a distinction between residential and commercial property owners and that Chapter 95 did not apply because RBI was building a residence. *Id.* However, he did not present that argument to the trial court, and the Amarillo court overruled it as unpreserved. *Id.*

In support of its traditional motion for summary judgment, CalAtlantic attached the affidavit of Andrew Richards, the person responsible for managing construction at the time of the accident. He averred that "CalAtlantic was the owner of the premises located at 1887 Bareback Ranch Road, Frisco, Texas 75036 at the time of the subject accident on or about October 18, 2017." In his affidavit, Richards also explained that CalAtlantic hired Perez Masonry "as an independent contractor to perform framing work at new-home construction sites owned by CalAtlantic" and that CalAtlantic "did not control the means, methods, or details of the work performed by Perez Masonry, its employees, or its subcontractors, including the work performed when [Jose] was allegedly injured." To the affidavit, Richards attached a copy of the Master Subcontractor Agreement between CalAtlantic as "Contractor" and Perez Masonry as "Subcontractor." The Master Subcontractor Agreement described the work to be performed by Perez Masonry as well as the performance standards to be used. It also defined "Owner" as "defined in the Work Agreement" or if not defined in the Work Agreement, as "the Affiliate of CalAtlantic Group, Inc. that is owner of the land on which the Work is to be completed." A "Work Agreement" was a "contract to perform specified work for a Contract Price" and certain attachments thereto.

The Albas' pleadings alleged that Jose was injured "while working construction on Defendants' jobsite premises located at 1887 Bareback Ranch Road Frisco, Texas 75036" and that CalAtlantic "was the owner of the jobsite premises." The Albas

11

contended that CalAtlantic was negligent in failing to follow proper safety standards, in failing to maintain proper control and/or supervision over the jobsite, in failing to provide proper and/or adequate equipment to maintain a safe work environment, in failing to provide proper training and control of its agents or employees, and in failing to maintain a safe work environment "for its guests/employees."

In Jose's affidavit filed in response to the motion for summary judgment, he stated,

> On or about October 18, 2017, I was out at a residential home being constructed at 1887 Bareback Road, Frisco, Texas 75036. [Perez Masonry] was a subcontractor on the construction of the home at 1887 Bareback Road. [CalAtlantic] was the owner and general contractor on the construction of the home at 1887 Bareback Road. On that day, I was asked by [Perez Masonry] to go out and look at a masonry job that had been started by another company and not finished at that home. We were hired by [CalAtlantic] to finish the masonry job.

It is undisputed that CalAtlantic owned these premises, that the premises are real property, that CalAtlantic was the contractor and Perez Masonry was the subcontractor, and that Jose was there on behalf of Perez Masonry to do masonry work. Similar to the facts in *Los Compadres, Clark*, and *Alonso, supra*, Jose was working at a new home construction site owned by CalAtlantic. Because the evidence conclusively establishes that the property where Jose's injuries occurred was used for "commercial or business purposes," we hold that CalAtlantic is a "property owner" pursuant to Chapter 95. *See* Tex. Civ. Prac. & Rem. Code Ann. § 95.001. Therefore, we overrule the Albas' first issue.

12

**2. Jose's injuries were the result of a condition or use of the same improvement on which he was working when injured.**

In the Albas' second issue, they contend that CalAtlantic failed to prove that Jose's injuries were the result of a condition or use of the same improvement on which he was working when he was injured. Specifically, they state that Jose's "injuries were not the result of a condition or use of the same improvement (masonry/brick work) on which he was working when he was injured, but from [a] 2x4 pulling loose." CalAtlantic responds that "the Albas' argument applies Section 95.002(2) too narrowly, relying on cases that have been rejected by other courts and do not comport with the Texas Supreme Court['s] recent holdings that broadly apply Section 95.002(2)." We agree.

Chapter 95 applies only to a claim for damages "that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement." *Id.* § 95.002(2). Chapter 95's reference to a claim arising from "the condition . . . of an improvement to real property" contemplates a claim for premises liability, while a claim arising from the "use of an improvement to real property" refers to a claim based on negligent activities. *Endeavor Energy Res., L.P. v. Cuevas*, 593 S.W.3d 307, 310 (Tex. 2019) (citing *Abutahoun*, 463 S.W.3d at 50).

The definition of "improvement" in Chapter 95 is broad. *Energen*, 2022 WL 726976, at *4 (citing *Abutahoun*, 463 S.W.3d at 49). An improvement is any addition

13

to real property, other than fixtures, that can be removed without causing injury to the real property. *Los Compadres*, 622 S.W.3d at 784 (citing *Abutahoun*, 463 S.W.3d at 49); *see Torres v. Chauncey Mansell & Mueller Supply Co.*, 518 S.W.3d 481, 487 (Tex. App.—Amarillo 2017, pet. denied) (concluding that what constitutes the improvement is not limited to the specific mechanism causing the injury, but rather, the interrelationship of the mechanism with its physical and geographic environments are factors that define the improvement's breadth). "Improvement" includes "all additions to the freehold except for trade fixtures [that] can be removed without injury to the property." *Abutahoun*, 463 S.W.3d at 49 (quoting *Sonnier v. Chisholm-Ryder Co.*, 909 S.W.2d 475, 479 (Tex. 1995)). A claim satisfies this part of Section 95.002's requirement only if the claim "results from a condition or use of the same improvement on which the contractor (or its employee) is working when the injury occurs." *Ineos*, 505 S.W.3d at 567. A workplace may include several different improvements, and each improvement may possess numerous conditions. *Los Compadres*, 622 S.W.3d at 783. Several recent cases have addressed the "condition" and "improvement" components of Chapter 95.

In *Ineos*, the worker—a boilermaker—was sent to replace a valve on a furnace header owned by Ineos. 505 S.W.3d at 559. While he did so, gas leaked from a pipe valve connected to a different furnace. *Id.* at 559–60. The subsequent explosion caused the worker's injuries, and he sued Ineos for damages. *Id.* at 560. The worker argued that his injuries did not result from the same improvement on which he was

working when injured. *Id.* at 566–67. While the supreme court agreed "that Chapter 95 only applies when the injury results from a condition or use of the same improvement on which the contractor (or its employee) is working when the injury occurs," it concluded that "valves and furnaces, though perhaps 'separate' in a most technical sense, were all part of a single processing system within a single plant on Ineos' property." *Id.* at 567–68. Rejecting the invitation "to divide the plant's 'gas process' system of furnaces and headers valve-by-valve or line-by-line into separate, discreet improvements," the court held that the entire system was a single "improvement" under Chapter 95. *Id.*

After *Ineos*, the supreme court decided *Los Compadres*. There, a subcontractor's workers were electrocuted while drilling holes and pouring pilings for condominiums. 622 S.W.3d at 777. While "[n]o one knows exactly what happened to cause the accident," the workers were lifting the rebar and placing one end into the concrete when the other end of the rebar contacted a live power line. *Id.* at 778. On appeal, the property owner argued that the power line was a dangerous condition of the "workplace" on which the workers were working when they were injured. *Id.* at 783. While rejecting this "workplace" argument, the supreme court noted that "[i]f a dangerous condition, by reason of its proximity to an improvement, creates a probability of harm to one who 'constructs, repairs, renovates, or modifies' the improvement in an ordinary matter, it constitutes a condition of the improvement itself." *Id.* at 785–86 (citing Tex. Civ. Prac. & Rem. Code Ann. § 95.002(2)). "Under

15

these facts—in which the plaintiffs were directly exposed to the dangerous condition because of its close proximity to the improvement on which they were working—we conclude that the energized power line created a dangerous condition of the piling itself." *Id.* at 786. Therefore, the court concluded that Chapter 95 applied to the negligence claims against the property owner. *Id.* at 790. The injured workers nevertheless prevailed because the evidence showed that the owner had actual knowledge of the dangerous condition, *id.* at 787, and the fact that the line was energized was not open and obvious. *Id.* at 790.

Recently, in *Energen*, the supreme court considered "whether a negligence claim can arise from the condition or use of an improvement even when negligence elsewhere is alleged to have contributed to the plaintiffs' injuries." 2022 WL 726976, at *1. In that case, a supervisor of a company completing a water well was injured after natural gas flowing from the water well, which was 500 feet from an oil well that the owner was drilling, caught fire and exploded. *Id.* at *2. The injured worker and others sued, asserting that Chapter 95 did not apply to their claims because the improvement on which they were working—the water well—was not the same improvement from which their claims arose—the oil well. *Id.* at *2. Energen asserted that a condition—rather than a use—of the water well caused plaintiffs' damages. *Id.* at *5. The supreme court noted that "something is a condition of an improvement if it 'affect[s] the "state of being" of' that improvement." *Id.* (quoting *Los Compadres*, 622 S.W.3d at 785). Pointing out that "plaintiffs' own petition alleges that their

16

damages were caused by negligence arising from a dangerous condition of the water well on which they were working," the supreme court held that Chapter 95 applied and reinstated the trial court's take-nothing judgment. *Id.* at *6, 9.[3]

Here, Jose testified by affidavit that he was asked by Perez Masonry "to go out and look at a masonry job that had been started by another company and not finished at that home." Jose then described how the accident occurred:

> I went into the house at 1887 Bareback Road and went upstairs to look at a second floor outside balcony area with two sides that were open and exposed to the outside. The balcony was to have some brick support columns built up at the ends of the balcony for support. One of the open sides of the balcony had a single 2 x 4 that was running across about 5 or 6 inches across the base of the deck and a second 2 x 4 about a foot above and parallel to the first 2 x 4. The other open side of the balcony did not have any 2 x 4's across the opening at the end of the deck.
>
> [ ] As I was looking at the strings hanging down from the top of the center column, my leg was up against both 2 x 4 cross supports when the top 2 x 4 pulled loose on one end.

Attached to his affidavit were four pictures that Jose said "fairly and accurately reflect the scene of [his] fall as it existed on the day that it happened." The pictures show

---

[3]The Albas cite *Hernandez v. Brinker Int'l Inc.*, 285 S.W.3d 152 (Tex. App.—Houston [14th Dist.] 2009, no pet.), *Cox v. Air Liquide Am., LP*, 498 S.W.3d 686 (Tex. App.—Houston [14th Dist.] 2016, no pet.), and *Paniagua v. Weekley Homes, LLC*, No. 05-19-00439-CV, 2021 WL 118663 (Tex. App.—Dallas Jan. 13, 2021, pet. filed) (mem. op.), in support of their argument that Jose's injuries were not the result of the condition or use of the same improvement on which he was working. However, *Hernandez* and *Cox* were decided before *Los Compadres* and *Energen*. And *Paniagua*, also decided before *Los Compadres*, relied on *Hernandez* and *Cox* for its analysis of whether the property owner met its Subsection 95.002(2) burden. *Paniagua*, 2021 WL 118663, at *8. Thus, we look for guidance to the recent cases from the supreme court rather than the cases from our sister courts that were cited by the Albas.

17

(1) a second-floor balcony with unfinished masonry work and one secure 2 x 4 and one partially secured 2 x 4 (both 2 x 4's are connected in part to the vertical support columns with unfinished masonry work), (2) two views from the second floor balcony, and (3) concrete and brick debris on the ground.

In his amended pleadings filed on the same day as his response to the motion for summary judgment, Jose described his injuries as resulting from a fall "[w]hile working in a position above ground to construct a house on the jobsite premises." He stated that he "fell when the railing that he was standing next to broke loose." In the response to the summary judgment motion, the Albas stated that the "evidence shows that [Jose] was hired to do masonry work on brick support columns at the ends of a balcony."

The Albas argue that Jose's "injuries were not the result of a condition or use of the same improvement (masonry/brick work) on which he was working when he was injured, but from [a] 2 x 4 pulling loose." CalAtlantic contends that consistent with the interplay between the pilings and powerline in *Los Compadres*,[4] "the 2 x 4's

---

[4]In *Los Compadres*, the supreme court discussed how broadly to define the term "improvement" in Chapter 95.

> Each piling Valdez and Teran installed on the premises could constitute an improvement to the real property. To the extent the pilings were part of the building's foundation, the foundation itself, including the pilings, could be considered a single improvement. And in the broadest sense, the entire condominium building could be considered a single improvement of which the foundation and its pilings were a part. Here, Valdez and Teran were part of a crew that was hired to construct only

connection to the support column renders the 2 x 4 a condition of the support column" and that the improvement in this case is the balcony itself.

The supreme court has stated that "improvement" under Chapter 95 is defined broadly. *Ineos*, 505 S.W.3d at 568. In addition, a dangerous condition by reason of its proximity to an improvement can constitute a condition of the improvement itself. *Los Compadres*, 622 S.W.3d at 785–86. And something is a condition of an improvement if it affects the state of being of that improvement. *Energen*, 2022 WL 726976, at *5.

Applying the analysis and holdings in *Ineos, Los Compadres*, and *Energen*, and under the facts of this case—in which Jose was directly exposed to the dangerous condition of the 2 x 4 because of its close proximity to the improvement on which he was working—the loose 2 x 4 created a dangerous condition of the brick column itself. *See Martin v. WPP Props., LLC*, No. 12-20-00243-CV, 2021 WL 2816411, at *6 (Tex. App.—Tyler June 30, 2021, pet. filed) (mem. op.) (applying *Ineos* and *Los Compadres* to "compel [its] conclusion that the external staircase is part of the same improvement as the apartment"). We conclude that Jose's injuries were the result of a

> the pilings, not the foundation or the building. That fact would suggest that we define the improvement narrowly, to include only the pilings, because the statute requires that the injury arise from the condition or use of the improvement that the contractor or subcontractor "constructs, repairs, renovates, or modifies." And, in fact, Paredes and his crew constructed only the pilings, not the foundation or the building.

622 S.W.3d at 784.

condition or use of the same improvement on which he was working when injured. Therefore, we overrule the Albas' second issue.

## IV. CONCLUSION

Having overruled both of the Albas' issues, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Delivered: May 5, 2022